| Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number | FOR COURT USE ONLY |
|---|---|
| Stephen E. Penner, Esq. SBN 74895<br>1215 De La Vina Street, Suite "K"<br>Santa Barbara, CA 93101<br><br>☐ *Individual appearing without counsel*<br>☒ *Attorney for:* | *150.00 paid*<br><br>**FILED**<br>APR 02 2010<br>CLERK U.S. BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY:          Deputy Clerk |

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**CENTRAL DISTRICT OF CALIFORNIA** | |
| In re<br>  Patrick Michael Downey<br>  Norma Marie Downey<br><br>                              Debtor(s). | CHAPTER: 11<br><br>CASE NO.: 9:09-bk-10860-RR<br><br>DATE: May 6, 2010<br>TIME: 10:30 a.m.<br>CTRM: 201<br>FLOOR: 2nd |

## NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY
### UNDER 11 U.S.C. § 362 (with supporting declarations)
### (MOVANT: William L. Protzman                              )
### (Action in Non-bankruptcy Forum)

1. NOTICE IS HEREBY GIVEN to the Debtor(s) and Trustee (if any)("Responding parties"), their attorneys (if any), and other interested parties that on the above date and time and in the indicated courtroom, Movant in the above-captioned matter will move this Court for an Order granting relief from the automatic stay as to Debtor(s) and Debtor's(s') bankruptcy estate on the grounds set forth in the attached Motion.

2. **Hearing Location:**   ☐ 255 East Temple Street, Los Angeles          ☐ 411 West Fourth Street, Santa Ana
                           ☐ 21041 Burbank Boulevard, Woodland Hills      ☒ 1415 State Street, Santa Barbara
                           ☐ 3420 Twelfth Street, Riverside

3. a.  ☒  This Motion is being heard on REGULAR NOTICE pursuant to Local Bankruptcy Rule 9013-1. If you wish to oppose this Motion, you must file a written response to this Motion with the Bankruptcy Court and serve a copy of it upon the Movant's attorney (or upon Movant, if the Motion was filed by an unrepresented individual) at the address set forth above no less than 14 days before the above hearing and must appear at the hearing of this Motion.

   b.  ☐  This Motion is being heard on SHORTENED TIME. If you wish to oppose this Motion, you must appear at the hearing. Any written response or evidence must be filed and served:

         ☐ at the hearing       ☐ at least _____ court days before the hearing.

      (1) ☐ A Motion for Order Shortening Time was not required (according to the calendaring procedures of the assigned judge).

      (2) ☐ A Motion for Order Shortening Time was filed per Local Bankruptcy Rule 9075-1(b) and was granted by the Court.

      (3) ☐ A Motion for Order Shortening Time has been filed and remains pending. Once the Court has ruled on that Motion, you will be served with another notice or an order that will specify the date, time, and place of the hearing on the attached Motion and the deadline for filing and serving a written opposition to the Motion.

4. You may contact the Bankruptcy Clerk's Office to obtain a copy of an approved court form for use in preparing your response *(Optional Court Form F 4001-1.RES)*, or you may prepare your response using the format required by Local Bankruptcy Rule 9004-1 and the Court Manual.

*(Continued on next page)*

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

December 2009                                                                    **F 4001-1M.NA**

Motion for Relief from Stay (Non-bankruptcy Action) - *Page 2 of 7*___      **F 4001-1M.NA**

| In re | (SHORT TITLE) | CHAPTER: 11 |
|---|---|---|
| Patrick Michael Downey | | CASE NO.: 9:09-bk-10860-RR |
| Norma Marie Downey | Debtor(s) | |

5.  If you fail to file a written response to the Motion or fail to appear at the hearing, the Court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

Dated: March **3/** , 2010

Law Offices of Stephen E. Penner
_____
*Print Law Firm Name (if applicable)*


Stephen E. Penner
_____
*Print Name of Individual Movant or Attorney for Movant*

_____
*Signature of Individual Movant or Attorney for Movant*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

December 2009                                                      **F 4001-1M.NA**

Motion for Relief from Stay (Non-bankruptcy Action) - *Page 3 of 7___*   **F 4001-1M.NA**

| In re | (SHORT TITLE) | CHAPTER: 11 |
|---|---|---|
| Patrick Michael Downey<br>Norma Marie Downey | Debtor(s). | CASE NO.: 9:09-bk-10860-RR |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY
### (MOVANT:  William L. Protzmann                           )

1. **The Non-bankruptcy Action:** Movant moves for relief from the automatic stay as to Debtor(s) and Debtor's(s') bankruptcy estate with respect to the following pending lawsuit or administrative proceeding (the "Non-bankruptcy Action") in a non-bankruptcy forum:

    Case name: William L. Protzmann, et al. vs. Historical Real Estate and Finance Corporation et al.
    Docket number: CN-08-3385
    Court or agency where pending: U.S. District Court, Central District of (California Western Division)

2. **Case History:**
    a. ☒ A voluntary  ☐ An involuntary   petition under Chapter  ☐ 7  ☒ 11  ☐ 12  ☐ 13
       was filed on *(specify date)*:
    b. ☐ An Order of Conversion to Chapter   ☐ 7  ☐ 11  ☐ 12  ☐ 13
       was entered on *(specify date)*:
    c. ☐ Plan was confirmed on *(specify date)*:
    d. ☐ Other bankruptcy cases affecting this action have been pending within the past two years.  See attached Declarations.
    e. For additional case history, see attached continuation page.

3. **Grounds for Relief from Stay:**  Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay to proceed with the Non-bankruptcy Action to final judgment in the non-bankruptcy forum for the following reasons:
    a. ☒ The bankruptcy case was filed in bad faith specifically to delay, hinder or interfere with prosecution of the Non-bankruptcy Action.
    b. ☐ The claim is insured.  Movant seeks recovery only from applicable insurance, if any, and waives any deficiency or other claim against the Debtor(s) or estate property.
    c. ☐ Movant seeks recovery primarily from third parties and agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor(s) or estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.
    d. ☐ Mandatory abstention applies under 28 U.S.C. § 1334(c)(2), and Movant agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor(s) or estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.
    e. ☒ The claims are non-dischargeable in nature and can be most expeditiously resolved in the non-bankruptcy forum.
    f. ☒ The claims at issue arise under non-bankruptcy law and can be most expeditiously resolved in the non-bankruptcy forum.
    g. ☒ Other reasons to allow the Non-bankruptcy Action to proceed are set forth in an attached Declaration.

4. ☐ Movant also seeks annulment of the stay so that filing of the bankruptcy petition does not affect any and all of the enforcement actions that were taken after the filing of the bankruptcy petition in this case, as specified in the attached Declaration(s).

5. **Evidence in Support of Motion:**  *(Important Note:  Declaration(s) in support of the Motion MUST be attached hereto.)*
    a. ☒ Movant submits the attached Declaration(s) to provide evidence in support of this Motion pursuant to Local Bankruptcy Rules.
    b. ☒ Movant requests that the Court consider as admissions the statements made by Debtor(s) under penalty of perjury concerning Movant's claims set forth in Debtor's(s') Schedules.  Authenticated copies of the relevant portions of the Schedules are attached as Exhibit "E"___ .

       `Amended Schedules filed 7/28/09 listing Movant as a creditor holding one of the 20 largest unsecured claims.`

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

December 2009                                                          **F 4001-1M.NA**

Motion for Relief from Stay (Non-bankruptcy Action) - *Page 4 of* _____   **F 4001-1M.NA**

| | |
|---|---|
| In re                      (SHORT TITLE)<br>Patrick Michael Downey<br>Norma Marie Downey                          Debtor(s). | CHAPTER: 11<br><br>CASE NO.: 9:09-bk-10860-RR |

    c. ☒ Other evidence *(specify)*:
        See Attachment 5.c.

6.  ☐ **An optional Memorandum of Points and Authorities is attached to this Motion.**

**WHEREFORE, Movant prays that this Court issue an Order granting the following:**

1.  Relief from the stay to Movant (and its successors and assigns, if any) *(check boxes re all applicable relief requested)*:

    a. ☒ Terminating the stay as to Debtor(s) and Debtor's(s') bankruptcy estate.

    b. ☐ Annulling the stay so that the filing of the bankruptcy petition does not affect postpetition acts, as specified in the attached Declaration(s).

    c. ☐ Modifying or conditioning the stay as set forth in the attached continuation page:

2.  Allowing Movant to proceed under applicable non-bankruptcy law to enforce its remedies to proceed to final judgment in the non-bankruptcy forum, provided that the stay remains in effect with respect to enforcement of any judgment against Debtor(s) or estate property. Movant reserves the right to have any future judgment obtained in non-bankruptcy forum determined to be non-dischargeable in the within bankruptcy case.

3. ☒ Additional provisions requested:

    a. ☒ That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

    b. ☒ That the 14-day stay prescribed by Bankruptcy Rule 4001(a)(3) be waived.

    c. ☐ That the Extraordinary Relief be granted as set forth in the Attachment *(attach Optional Court Form F 4001-1M.ER)*.

    d. ☐ For other relief requested, see attached continuation page.

4.  If relief from stay is not granted, Movant respectfully requests the Court to order adequate protection.

Dated: March 31, 2010

Respectfully submitted,

William L. Protzmann
*Movant Name*

Law Offices Of Stephen E. Penner, P.C.
*Firm Name of Attorney for Movant (if applicable)*

By: *[signature]*
*Signature*

Name:  Stephen E. Penner
        *Typed Name of Individual Movant or Attorney for Movant*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*                                                                                                  **F 4001-1M.NA**

ATTACHMENT 5.c RE OTHER EVIDENCE

## **ATTACHMENT 5.c. RE OTHER EVIDENCE**

1

2     Attached hereto as **Exhibit "A"** is a true and correct copy of Movant's original Complaint

3  filed May 22, 2008 with the U.S. District Court (Central Division Of California) against

4  defendants The Historical Real Estate & Finance Company and Patrick Downey, et. al (Case No.

5  CV 08-03385).

6     Attached hereto as **Exhibit "B"** is a true and correct copy of Movant's Second Amended

7  Complaint filed September 24, 2008 in the U.S. District Court (Central District of California)

8  against defendants The Historical Real Estate And Finance Company and Patrick Downey, et al

9  (Case No. CV 08-03385).

10     Attached hereto as **Exhibit "C"** are true and correct copies of Proofs Of Service on Debtor

11  Patrick Downey and The Historical Real Estate & Finance Company (a.k.a. The Historical Real

12  Estate Co.).

13     Attached hereto as **Exhibit "D"** is a certified copy of Fictitious Business Name Statement

14  signed by Norma M. Downey as President of The Historical Real Estate & Finance Company

15  recorded on 8/30/07 in Ventura County California; and a certified copy of the Statement Of

16  Information (Domestic Stock Corporation) filed on 8/22/07 with the California Secretary of State

17  identifying debtor Norma Downey as the Chief Financial Officer of the Historical Real Estate &

18  Finance Company.

19     Attached hereto as **Exhibit "E"** is a copy of the debtors' Amended Schedules filed 7/28/09

20  (after Movant filed his claim herein) listing Movant as a creditor holding one of the 20 largest

21  unsecured claims; debtor Patrick Downey was personally served with the non-bankruptcy action

22  on 5/29/08 (**Exhibit "C"**), but then failed to identify Movant's lawsuit when he filed his original

23  Chapter 11 Bankruptcy Petition on 3/16/09.

24

25

26

27

28

| In re | (SHORT TITLE) | CHAPTER: 11 |
|---|---|---|
| Patrick Michael Downey Norma Marie Downey | Debtor(s). | CASE NO.: 9:09-bk-10860-RR |

## DECLARATION RE ACTION IN NON-BANKRUPTCY FORUM
### (MOVANT: William L. Protzmann                )

I, William L. Protzmann _____, declare as follows:
*(Print Name of Declarant)*

1.  I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding the state court lawsuit, administrative proceeding, or other action in a non-bankruptcy forum ("Non-bankruptcy Action") that is the subject of this Motion because:

    a. ☒  I am the Movant.

    b. ☐  I am the Movant's attorney of record in the Non-bankruptcy Action.

    c. ☐  I am employed by the Movant as *(state title and capacity)*:

    d. ☐  Other *(specify)*:

2.  I am one of the custodians of the books, records and files of Movant as to those books, records and files that pertain to the Non-bankruptcy Action. I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the Court if required.

3.  The Non-bankruptcy Action at issue is currently pending as:

    Case name: William L. Protzmann, et al. vs. Historical Real Estate Finance Corporation, Patrick Downey, et al.
    Docket number:CV-08-3385
    Court or agency where pending: U.S. District Court, Central District of California (Western Division)

4.  **Procedural Status:**

    a.  The causes of action pleaded in the non-bankruptcy forum are *(list)*:
        Original Complaint (Exhibit "A") and Second Amended Complaint (Exhibit "B"); various causes of action for predatory lending, racketeering, fraud, etc.  See attached Exhibit "A" and Exhibit "B".

        True and correct copies of the pleadings filed before the non-bankruptcy forum are attached hereto as Exhibit A & B ___.

    b.  The Non-bankruptcy Action was filed on *(specify date)*: Original Complaint 5/22/08 (Exhibit "A")
        and Second Amended Complaint 9/24/08 (Exhibit B).
    c.  Trial or hearing began/is scheduled to begin on *(specify date)*:
        Not set for trial.
    d.  The trial or hearing is estimated to require the following number of court days *(specify)*:

    e.  Other defendants to the Non-bankruptcy Action are *(specify)*: See attached original Complaint
        (Exhibit A) and Second Amended Complaint (Exhibit B)
5.  **Grounds for relief from stay:**

    a.  ☐  The claim is insured. The insurance carrier and policy number are *(specify)*:

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*                                                                                 **F 4001-1M.NA**

Motion for Relief from Stay (Non-bankruptcy Action) - *Page 6 of* ____   **F 4001-1M.NA**

| In re | (SHORT TITLE) | CHAPTER: 11 |
|---|---|---|
| Patrick Michael Downey | | |
| Norma Marie Downey | Debtor(s). | CASE NO.: 9:09-bk-10860-RR |

b.  ☒  The matter can be tried more expeditiously in the non-bankruptcy forum.

   (1) ☒ It is currently set for trial on: To be set.

   (2) ☒ It is in advanced stages of discovery and Movant believes that it will be set for trial by *(specify date)*:
The basis for this belief is *(specify)*:
Plaintiff propounded written discovery to defendants in March, 2009; Plaintiff anticipates discovery Motions set before trial.  Defendants have exclusive control over evidentiary loan and banking documents necessary for trial.

   (3) ☒ The matter involves non-debtor parties who are not subject to suit in the bankruptcy court.  A single trial in the non-bankruptcy forum is the most efficient use of judicial resources.

See attachment 5.b (3).

c.  ☒  The bankruptcy case was filed in bad faith specifically to delay or interfere with the prosecution of the Non-bankruptcy Action.

   (1) ☐ Movant is the only creditor (or the only substantial creditor) scheduled by the Debtor(s).

   (2) ☒ The timing of the petition filing shows that it was intended to delay or interfere with the Non-bankruptcy Action based upon the following facts *(specify)*:
Please see Attachment 5.c.2.

See attachment 5.c (2)

   (3) ☒ Debtor(s) does(do) not have a reasonable likelihood of reorganizing in this Chapter ☒ 11 ☐ 13   bankruptcy case based upon the following facts *(specify)*:

See attachment 5.c (3)

d.  ☒  For other facts justifying relief from stay, see attached continuation page.

**I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on** March 31, 2010, **at** Idyllwild, California **(city, state).**

William L. Protzmann
*Print Declarant's Name*

*Signature of Declarant*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

December 2009      **F 4001-1M.NA**

ATTACHMENT 5.b (3) RE NON-DEBTOR
PARTIES

## ATTACHMENT 5.b (3) RE NON-DEBTOR PARTIES

Other non-debtor defendants in the non-bankruptcy lawsuit include the following:

1.      Defendant THE HISTORICAL REAL ESTATE AND FINANCE COMPANY at all times relevant herein was a corporation domiciled and authorized to conduct business in the State of California and doing business in Ventura, California as a mortgage brokerage business.

2.      Defendant Greg Clark at all times relevant herein was a real estate broker and owner and agent of Historical Finance.

3.      Defendant THE LAWYERS TITLE COMPANY at all times relevant herein was a corporation domiciled and authorized to conduct business in the State of California, the escrow agent of Plaintiff's and bound to perform with skill and diligence and terms and conditions of the escrow agreement.

4.      Defendant DAWN HOGAN, is an escrow officer and agent of Lawyers Title at all times relevant herein and working within the scope and course of her employment with Defendant Lawyers Title. Defendant Lawyers Title and Hogan are referred to collectively as Defendants Lawyers Title and agents of Plaintiff at all times relevant herein.

5.      Defendant WELLS FARGO BANK, N.A. was at all times relevant herein a national association domiciled and authorized to conduct business in the State of California. Wells Fargo Bank if a federally chartered savings and loan association organized and operating under the Home Owners' Loan Act ("HOLA"), 12 U.S.S. 1464(a).

6.      Defendant WASHINGTON MUTUAL BANK, FA at all times relevant herein is a corporation organized under the laws of the State of Washington and authorized to conduct business in the State of California. Washington Mutual is a federally chartered savings and loan association organized and operating under the Home Owners' Loan Act ("HOLA"), 12 U.S.A. 1464(a).

ATTACHMENT 5.c (2) RE TIMING OF
PETITION

## ATTACHMENT 5.c (2) RE TIMING OF PETITION

U.S. District Court Complaint was filed on 5/22/08 and service made on debtor defendant PAT DOWNEY and his corporation on 5/29/08. He filed the within Chapter 11 Petition on 3/16/09. Plaintiff has obtained evidence that debtor Norma Marie Downey is the President of corporate defendant The Historical Real Estate & Finance Company in that she signed a Fictitious Business Name Statement filed in Ventura County, California on 8/30/07 attesting to that fact, for the purpose of doing business at 1937 Goodyear Ave., #705, Ventura, CA 93003 [See **Exhibit "D"** which includes a certified copy of the Statement].

Plaintiff has obtained evidence that debtor Norma Marie Downey is also the Chief Financial Officer of corporate defendant The Historical Real Estate & Finance Company in that she is named as CFO in the Statement Of Information (Domestic Stock Corporation) filed on 8/22/07 with the California Secretary of State [See **Exhibit "D"** which includes a certified copy of the Statement].

Plaintiff will seek leave to amend the U.S. District Court Complaint to add her as a defendant and allege liability of Norma Downey as President of the corporation.

ATTACHMENT 5.c (3) UNLIKELY
REORGANIZATION

## ATTACHMENT 5.c (3) RE UNLIKELY REORGANIZATION

Debtors Patrick M. Downey and Norma M. Downey do not have a reasonable likelihood of reorganizing in this Chapter 11 Bankruptcy case.

Debtor/Defendant Patrick Michael Downey was convicted under Title 18 Sec. 1341, Frauds & Swindles (brokering without a license) on 6/13/96. According to the California Department of Real Estate which revoked his license in 1996, Movant believes that current criminal charges are pending against this debtor for the same type of activities he was previously convicted of. He has also defrauded a couple named Richard and Yolanta Markowicz who have a similar civil action pending against Mr. Downey, as well as numerous civil actions filed against him filed by Michael Starr, Alex Ryan and Mona Dobben.

DECLARATION OF WILLIAM L. PROTZMANN
CONTINUATION PAGE: ATTACHMENT 5.d.

## DECLARATION OF WILLIAM L. PROTZMANN
## CONTINUATION PAGE: ATTACHMENT 5.d.

Movant WILLIAM L. PROTZMANN declares as follows, as a continuation of his hereinbefore

attached Declaration:

The following facts are alleged in my Second Amended Complaint filed on 9/24/08.

1.      I owned a residence in Riverside County which I transferred to my family trust in

2006.  In early 2006, I met Patrick Downey who represented to me that he was a skilled,

experienced and licensed mortgage broker with Historical Real Estate & Finance Company

(hereinafter referred to as "Historical Finance").  When I needed quick refinancing on my home in

2006, Mr. Downey, Historical Finance and its agents represented to me that they could get me

quickly qualified for a competitive loan to be funded within 30 days; I relied upon these

representations and made application through Historical Finance for a loan against my house in

February, 2007.

2.      At that time, my home was encumbered with a first deed of trust and line of

credit held by Countrywide Home Loans, which I continued to pay expecting a prompt refinance

through Historical Finance.  On 3/1/07, I received refinance escrow documents from Lawyer's

Title officer, Dawn Hogan, ordered by Historical Finance, which I signed and returned

immediately.

3.      30 days later, I discovered that a new bank account had been opened in

my name at Wells Fargo Bank with a large $46,000 deposit which I did not make or authorize; that

bank was were I did all of my personal and business banking, a fact known to Historical Finance.

Two other names were on that account: Alex Ryan Yamamura and Diane Harris; I did not know

why they were also on the account, but I allege on information and belief that Alex Yamamura, my

---

**DECLARATION OF MOVANT- Page 1**

long time personal friend, had also engaged Mr. Downey to handle financial transactions for her. I understand that Mr. Downey had been making financial transactions related to Ms. Yamamura's business through the name of his wife, Norma Downey in 2007.

4.  A few days later I received a "loan commitment" letter from Washington Mutual listing 23 conditions upon which my loan would be approved. On 4/3/07, I faxed documents to Downey/Historical proving my ownership of the home and other financial data.

5.  On 4/4/07, Historical Finance faxed me a request to verify funds on deposit in my personal Wells Fargo account showing I had $11,000 on deposit, which was not true. I called Historical and questioned them since I never had more than $3,000 in that account in the first 3 months of 2007; they advised me to not worry about it.

6.  On 4/5/07, Historical Finance faxed me a Good Faith Estimate of closing costs, and on that date I faxed to them a statement from my CPA and two letters from my current lender, Countrywide, regarding charges for late mortgage payments which had not been paid due to delays of Historical Finance in obtaining the new loan.

7.  On 4/30/07 I faxed Historical Finance documents to establish my family trust per the Loan Commitment Letter from Washington Mutual.

8.  On 5/10/07, at Historical's request, I finally signed loan documents in a restaurant on Hwy. 405 before a notary. The new loans with Washington Mutual were funded on 5/14/07, more than 80 days since I first submitted my "30-day" refinance application. The loan documents were signed 34 days after receipt of the Good Faith Estimate, and 36 days after the Loan Commitment. By 5/14/07, the delay had caused me to incur late fees and additional interest for 30 and 60-day delinquencies on my Countrywide loans.

9.  On about 6/11/07, I again contacted Historical Finance asking why my

**DECLARATION OF MOVANT- Page 2**

name and SSN appeared in the new Wells Fargo account with a $46,000 deposit I knew nothing about (the "bogus account"). They responded stating that my name must remain on the account to show "verifications of deposit" until 6/30/07 when the account will be dissolved. On 6/18/07, I again contacted Historical Finance about the unauthorized appearance of my name and SSN on the bogus account, and they advised me that it was not fraud to show an account that I had no interest in, and if my SSN were taken off the account, it would have to be closed and there was no other way to get the loan. Two other individuals were still on that account: Alex Ryan Yamamura and Diane Harris.

10.    On 6/22/07, without my knowledge or consent, the sum of $46,000 was allegedly transferred from this bogus account to my own personal Wells Fargo account. I do not know how this was done without my consent. I did not know of this transfer until I received a call from Pat Downey on that date in which he accused me of "stealing" the money from the bogus account. Upon my inquiries to Wells Fargo, they would only inform me that the transfer of funds "took place on line". On 6/22/07, Historical Finance froze my personal Wells Fargo account, and informed me it would remain so until the "stolen" funds were returned to the bogus Wells Fargo account. I have no idea how Historical Finance was able to "freeze" my account without a court order.

11.    On 6/27/07, I was summoned to appear at Wells Fargo Bank in Santa Ana, CA, along with Alex Yamamura and Diane Harris, whose SSN's also appeared on the bogus account. At that time, a Wells Fargo employee, one Maricela Santana, took the following actions: she released the hold on my personal account, instructed me to withdraw $46,000 from that account and transfer the funds into a cashier's check payable to Mr. Downey, personally, instructed Ms. Yamamura and Ms. Harris to sign original signature cards for the bogus account,

then closed that bogus account and created a 2nd cashier's check payable to Mr. Downey, personally, for all remaining funds in the account.

12.    At that time and place, I was advised that if I did not comply with the requests of Historical Finance and Wells Fargo, they would call the police and I would be arrested and charged with theft from Wells Fargo.  I did not know at that time that it was illegal under state law to coerce someone with the threat of criminal prosecution.  Now, I wish the police had been called, for through their police power the illegal transactions of Mr. Downey, Historical Finance and Wells Fargo would have been brought to light.

13.    At that time, Ms. Santana stated that the two cashier's checks which I signed under threat of arrest would be hand-delivered to Patrick Downey.  No one at Wells Fargo would answer me as to how $46,000 wound up in my personal account, why other people were on the bogus account with my name, or why Mr. Downey was receiving the funds from the account in his personal name.  Employee Santana carried out all of the above transactions efficiently and would not tell me what was going on, or answer any questions or make disclosures to either Ms. Yamamura or Ms. Harris; all the time I was being coerced by Historical Finance and Wells Fargo Bank.

14.    Substantially due to the delay of Mr. Downey and Historical Finance, and the delay caused by the bogus transactions and theft claims of Wells Fargo, I was forced to file a Chapter 7 Bankruptcy on 7/17/07.  Washington Mutual obtained relief from the stay.  My discharge was entered on 11/13/07.

15.    On 11/14/07, Washington mutual sent me a certified notice of foreclosure proceedings.  On 1/8/08, I began RESPA proceedings based on fraud, nondisclosure, etc. sent to Washington Mutual by certified mail to 4 addresses which was not responded to.  A Default

Notice from Washington Mutual was sent to me, along with a number of debt validation notices from their agent. Thereafter, I tried sending a RESPA request again, I called phone numbers for Washington Mutual in which I was continually disconnected. In March, 2008, I received written communication from Washington and made calls to them with no resolution of the fraud issues, and I did not receive a response to the RESPA letter within 60 days as per 12 U.S.C. 2605. I tried to work with Washington Mutual through May, 2008 but my house was already in foreclosure and they would not modify my loan.

16.    I later learned that Mr. Downey was not a licensed mortgage broker in California when my new loan was being handled by him, a fact that Wells Fargo, Washington Mutual and Lawyer's Title either knew or should have known. I also learned that before I engaged his services, Mr. Downey had been convicted of mortgage fraud and his broker license revoked. Neither, Mr. Downey, nor anyone at Historical Finance, ever advised me of these facts before I engaged their services.

17.    I know of no way the above acts involving my mortgage and bank accounts could have occurred without the collusion and collaboration of Mr. Downey, the employees and owners of Historical Finance, Wells Fargo employees, and Washington Mutual employees all of whom had access to my personal and business records as the result of my loan application and supporting documents submitted to Historical Finance and Patrick Downey, which they all had custody of. They all benefitted monetarily from my loan application and processing, by fees and yield spread premiums.

18.    Substantially due to the negligence, unfair trade practices, fraud, and conspiracy between all the persons and entities which benefitted from my application for a new loan, I had to file for personal bankruptcy, my house was threatened with foreclosure, I am delinquent on my

**DECLARATION OF MOVANT- Page 5**

house payments, I have had to hire other professionals to try to salvage the mess they all created

regarding my mortgage, and I have suffered a loss of credit and my business reputation has been

damaged.

19.    I need to resolve this case in U.S. District Court due to the multiplicity of

acts of misconduct by persons who are not before the U.S. Bankruptcy Court.

20.    U.S. Dist. Case first filed in 5/22/08, herein Bankruptcy case filed 3/16/09.

Debtor Downey was served long before he filed for bankruptcy.

DATED:   March 31, 2010

_____

William L. Protzmann, Movant

---

**DECLARATION OF MOVANT- Page 6**

Motion for Relief from Stay (Non-bankruptcy Action) - *Page 7 of 7*    **F 4001-1M.NA**

| In re | (SHORT TITLE) | | CHAPTER:  11 |
|---|---|---|---|
| Patrick Michael Downey | | | |
| Norma Marie Downey | | Debtor(s). | CASE NO.:  9:09-bk-10860-RR |

**NOTE**: When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
1215 De La Vina Street, Suite "K"
Santa Barbara, California 93101

A true and correct copy of the foregoing document described as  Notice Of Motion And Motion For Relief From The
Automatic Stay Under 11 U.S.C. Sec. 362 (With Supporting Declarations)    will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document.  On _____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addressed indicated below:

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On  4/2/10 _____   I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☑ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 4/2/10 | Federico Campo | *Federico Campo* (signature) |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*    **F 4001-1M.NA**

SERVICE LIST

Patrick Michael Downey
1698 Robin Ave.
Ventura, CA 93003

Norma Marie Downey
1698 Robin Ave.
Ventura, CA 93003

U.S. Trustee
United States Trustee (ND)
21051Warner Center Lane, Suite 115
Woodland Hills, CA 91367


U.S. Trustee
Office of the U.S. Trustee
128 E. Carrillo Street
Santa Barbara, CA 93101

1  LAW OFFICE OF JENNIFER S. SMITH
   JENNIFER S. SMITH #75602
2  30251 Golden Lantern, Ste E-351
   Laguna Niguel CA 92677-5993
3  Tel: 808-638-7283
4  E-Mail: jenniferssmith@earthlink.net

5  Attorney for Plaintiff
   WILLIAM L. PROTZMANN
6  and WILLIAM L. PROTZMANN,
7  Trustee of the WILLIAM L.
   PROTZMANN TRUST
8  u/d/t June 1, 2006

FILED
CLERK, U.S. DISTRICT COURT

MAY 2 2 ...

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION ...

9
10          UNITED STATES DISTRICT COURT
11         CENTRAL DISTRICT OF CALIFORNIA
12          EASTERN DIVISION (RIVERSIDE)
13
14
15
16
17          CV 08 - 03385
18
19
20
21
22
23
24
25
26
27
28



Case 2:08-cv-03385-SJO-JC   Document 1-7   Filed 05/22/08   Page 3 of

| | |
|---|---|
| 1  WILLIAM L. PROTZMANN, an individual and WILLIAM L. PROTZMANN, Trustee of the WILLIAM L PROTZMANN TRUST, u/d/t June 1, 2006, | **CASE NO.**<br><br>**COMPLAINT; DEMAND FOR JURY TRIAL: SUMMONS** |

1 | WILLIAM L. PROTZMANN, an
2 | individual and WILLIAM L.
  | PROTZMANN, Trustee of the
3 | WILLIAM L PROTZMANN TRUST,
4 | u/d/t June 1, 2006,

5 |                    Plaintiffs,

6 |
7 |          vs.

8 | THE HISTORICAL REAL ESTATE
  | AND FINANCE, a corporation, GREG
9 | CLARK, an individual, PAT DOWNEY,
  | an individual, LAWYERS TITLE
10| COMPANY, a corporation, DAWN
11| HOGAN, an individual, WELLS
  | FARGO BANK, a corporation,
12| WASHINGTON MUTUAL BANK, FA
13| a corporation, and JOHN DOES 1-10;
  | JANE DOES 1-10; DOE
14| PARTNERSHIPS 1-10; DOE
15| CORPORATIONS 1-10; and OTHER
16| ENTITIES 1-10,
17|
  |                    Defendants.
18|

**CASE NO.**

**COMPLAINT; DEMAND FOR JURY TRIAL: SUMMONS**

19 | <u>**COMPLAINT**</u>

20

21 | COMES NOW, Plaintiff WILLIAM L. PROTZMANN and WILLIAM L.

22 | PROTZMANN, Trustee of the WILLIAM L. PROTZMANN TRUST, u/d/t June 1,

23 | 2006 (collectively referred to as "Plaintiff"), by and through their attorney,

24 | JENNIFER S. SMITH, and for a Complaint against the above-named Defendants,

25 | alleges and avers as follows:

26

27

28

2

Case 2:08-cv-03385-SGL-JC    Document 1-7    Filed 05/22/08    Page 4 of 7

## PARTIES

1.    Plaintiff WILLIAM L. PROTZMANN (hereinafter "Plaintiff Protzmann") at all times relevant herein is and was a resident of the County of Riverside, State of California.

2.    Plaintiff Protzmann is the Trustee of the Plaintiff trust known as WILLIAM L. PROTZMANN TRUST, u/d/t June 1, 2006 (hereinafter "Protzmann Trust").

3.    Defendant THE HISTORICAL REAL ESTATE AND FINANCE COMPANY (hereinafter "Historical Finance"),at all time relevant herein was a corporation domiciled and authorized to conduct business in the State of California and doing business in Ventura California as a mortgage brokerage business.

4.    Defendant Greg Clark (hereinafter "Defendant Clark"), at all times relevant herein was a real estate broker and owner and agent of Historical Finance.

5.    Defendant PAT DOWNEY (hereinafter "Defendant Downey") at all times relevant herein was an unlicensed mortgage broker and agent of Defendant Historical Finance and working within the scope and course of his employment with Defendant Historical Finance.

6.    Defendants Historical, Clark and Downey are collectively referred to as "Defendants Historical."

7.    Defendant THE LAWYERS TITLE COMPANY (hereinafter "Lawyers Title"), at all times relevant herein was a corporation domiciled and authorized to conduct business in the State of California.

8.    Defendant DAWN HOGAN, is an escrow officer and agent of Lawyers Title at all times relevant herein and working within the scope and

1  course of his employment with Defendant Lawyers Title at all times relevant

2  herein.

3         9.    Defendant WELLS FARGO BANK (hereinafter "Wells

4  Fargo"), at all time relevant herein is a corporation domiciled and authorized

5  to conduct business in the State of California.  Wells Fargo Bank is a

6  federally chartered savings and loan association organized and operating

7  under the Home Owners' Loan Act ("HOLA"), 12 U.S.A. 1464(a) (HOLA).

8         10.   Defendant WASHINGTON MUTUAL BANK, FA

9  (hereinafter "Washington Mutual"), at all times relevant herein is a

10  corporation organized under the laws of the State of Washington and

11  authorized to conduct business in the State of California.  Washington Mutual

12  is a federally chartered savings and loan association organized and operating

13  under the Home Owners' Loan Act ("HOLA"), 12 U.S.A. 1464(a) (HOLA).

14         11.   Defendants JOHN DOES 1-10; JANE DOES 1-10; DOE

15  PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; and OTHER

16  ENTITIES 1-10 (collectively referred to as "Doe Defendants"), are sued

17  herein under fictitious names because their true names and identities are

18  presently unknown to Plaintiff, except that they were connected to the present

19  lawsuit in some manner and/or are persons, corporations, entities, agents,

20  representatives, business entities, associations, employers, co-conspirators,

21  employees, or governmental entities or agencies responsible for the conduct

22  complained of herein or were in some other manner presently unknown to

23  Plaintiff engaged in the activities alleged herein, and/or were in some manner

24  responsible for the injuries and damages to Plaintiff.  Plaintiff will identify the

25  true names and capacities, activities and/or responsibilities when such

26  information is ascertained.  Plaintiff has made diligent and good faith efforts

27  to ascertain the identities of those responsible, including a review of material

28

1  generated in the investigation of the incident, which forms the basis of this

2  action. Plaintiff will seek leave of this Court to amend this Complaint when

3  the true names and capacities of the Doe Defendants have been ascertained

4  and the extent of their involvement with the acts and omissions stated herein.

5  **JURISDICTION AND VENUE**

6      12.   This has jurisdiction of this matter pursuant to 28 U.S.C.

7  §1331 as the claims arise under the laws of the United States. This Court also

8  has supplemental jurisdiction of the state claims pursuant to 28 U.S.C. §1367

9  as they are related to the claims in the action within original federal

10  jurisdiction and form part of the same case or controversy. Venue is also

11  proper in the Central District of California, Eastern Division of Riverside, as

12  the real property which is the subject of this action is situated in the County of

13  Riverside, performance of the escrow and loan transaction took place in

14  Riverside County and Defendants Lawyers Title, Wells Fargo Bank and

15  Washington Mutual all have offices found in the County of Riverside.

16  **STATEMENT OF RELEVANT FACTS**

17      13.   Plaintiff owned the real property commonly known as

18  53665 Idyllbrook Dr., Idyllwild, California, 92549, Tax Parcel No.

19  561220029-7 (hereinafter referred to as "Plaintiff's home" and lived there as

20  his primary residence. (Title to Plaintiff's home was transfer to the Protzmann

21  Trust in June 2006).

22      14.   Plaintiff was acquainted with Defendant Downey and met

23  him in the Spring of 2006 and he represented that he was a very experienced

24  mortgage broker.

25      15.   Shortly thereafter, Plaintiff entered into a business

26  relationship with Downey and others in 2006 and formed a company known

27  as the "Connection" which did not move past the planning stage.

28

Case 2:08-cv-03385-SJO-JC   Document 1-7   Filed 05/22/08   Page 7 of

16.    When Plaintiff needed refinancing of his home, Downey assured Plaintiff that he was well qualified as a mortgage broker and that Plaintiff could rely on him and Historical Finance to take care of everything a get Plaintiff a loan and equity line of credit.

17.    Plaintiff informed Historical Finance that he needed to have Plaintiff's home refinanced quickly to void a potential bankruptcy and necessary financial reorganization due to a lengthy divorce proceeding, including an unreasonable and excessive Temporary Support Order in place from November 2006 for which he was in contempt of court and subject to possible arrest and imprisonment.

18.    Downey, mortgage broker and agent of Historical Finance represented to Plaintiff that the loan process from application to funding would take 30 days or less and Plaintiff agreed to secure the financing mortgage services of Historical Finance if the refinancing could take place within a month or less. Downey assured Plaintiff that "I would have no trouble qualifying."

19.    As a result, early in February 2007, Plaintiff applied for a mortgage through Historical Finance to refinance an existing first trust deed and home equity line of credit on Plaintiff's home, both of which were held at that time by Countrywide Home Loans. (hereinafter "Countrywide").

20.    Plaintiff continued to pay the mortgage to Countrywide reasonably expecting a prompt closing and funding of the refinance with Historical Finance based on its representations of the month turn around for funding of the new financing to mitigate his financial crisis.

21.    On or about March 1, 2007, Plaintiff received refinance escrow instructions from Lawyers Title from its escrow officer and agent Defendant Hogan by mail.  Plaintiff reviewed, executed and returned them as

1  requested, in the provided self-addressed stamped envelope. (Copies of these

2  instructions are included with Borrower Copy of loan documents below as

3  Exhibit A – 7 pages).

4       22.   On or about March 31, 2007, Plaintiff became aware that

5  Plaintiff's online internet-based banking dashboard with Wells Fargo Bank

6  (the bank at which his personal and business banking accounts were held),

7  displayed a new deposit account with a large balance. The account number for

8  this new Wells Fargo Bank account was 986-5719893.

9       23.   Plaintiff did not execute any document to approve or give

10  authority to open a new deposit account with Wells Fargo Bank.

11       24.   On or about April 3, 2007, Plaintiff received a "loan

12  commitment" letter from Washington Mutual listing 23 conditions upon

13  which the loan would be approved (Exhibit B – 4 pages). Of these conditions,

14  Plaintiff was able to respond to some but not all, as detailed in his email to

15  Downey dated April 3 2007 (Exhibit B page 4).

16       25.   On or about April 3, 2007, Plaintiff also faxed additional

17  information to Downey at Historical Finance (care of Stacey Eagle)

18  including: a) Trust Transfer Deed dated June 2 2006 evidencing Plaintiff's

19  sole ownership of Plaintiff's home; b) homeowner's insurance policy from

20  Allstate for Plaintiff's home May 13, 2006 to May 13, 2007; c) utility bill

21  from Southern California Edison for utilities provided to Plaintiff's home

22  February 20, 2007 through March 21, 2007; and d) Family Law Summons in

23  PROTZMANN v. PROTZMANN, Case No. 06D000150, dated January 9,

24  2007 (Exhibit C – 14 pages).

25       26.   On or about April 4, 2007, Plaintiff received a faxed

26  "request for verification of deposit" from Defendant Historical Finance with

27  handwritten instructions to Plaintiff to "take this to your bank and fill it out."

28

1  The Wells Fargo account number listed on the request for verification of
2  deposit is #7553065207, and the balance listed was $11,000 (Exhibit D – 2
3  pages).

4     27.   Plaintiff's Wells Fargo Bank statements for this account for
5  January 3, 2007 through March 1, 2007, the period during in which Plaintiff's
6  loan application was made, have no instance of a balance over $7,200, and
7  Plaintiff stopped all activity and made no deposits on Wells Fargo Bank
8  account #7553065207 from about March 1 2007 due to proceedings in the
9  divorce court. Plaintiff had not deposited additional money in his Wells
10 Fargo account #7553065207 and had not authorized anyone to deposit funds
11 in Plaintiff's Wells Fargo account #7553065207 (Exhibit E – 17 pages).

12    28.   Plaintiff questioned Historical Finance as to its instructions
13 to obtain a verification of deposit Plaintiff's personal account #7553065207
14 with Defendant Wells Fargo Bank in the amount of $11,000 and was told "not
15 to worry about it."

16    29.   On April 5, 2007, Plaintiff received a faxed Good Faith
17 Estimate of Closing Costs from Historical Finance (Exhibit F – 2 pages).

18    30.   In addition, on April 5, 2007, Plaintiff faxed Historical
19 Finance a statement from Plaintiff's Certified Public Account, Hugh
20 Christensen, and two letters from Countrywide regarding charges for late
21 mortgage payments for the months of December 2006 and February 2007
22 (Exhibit G – 5 pages).

23    31.   On April 30, 2007, Plaintiff faxed Historical Finance a
24 certification of trust as requested by Defendant Washington Mutual per the
25 loan commitment letter, item #3, William L Protzmann Trust, u/d/t June 1
26 2006 (Exhibit H – 4 pages).

27

28

8

1        32.   On May 10, 2007, Plaintiff signed loan documents in

2    Mission Viejo California at Starbucks at La Paz and hwy 405 with a licensed

3    notary present. The new loans – 1st Trust Deed and Home Equity Line of

4    Credit with Defendant Washington Mutual – were funded on May 14, 2007

5    (Exhibit I – 124 pages).

6        33.   A Final Settlement Statement was mailed to Plaintiff from

7    Historical Finance shortly thereafter (Exhibit J – 5 pages).

8        34.   By the time the refinance closed and was funded on May

9    14, 2007, Plaintiff had incurred a 30-day and a 60-day late fee charge and

10   additional interest on the Countrywide first trust deed on Plaintiff's home and

11   a 30-day late on the home equity line.

12       35.   The loan documents were executed 34 days from receipt of

13   the Good Faith Estimate, 36 days from receipt of Loan Commitment, and, to

14   be conservative, more than 80 days after the Plaintiff's loan application with

15   Historical Finance.

16       36.   On or about June 11, 2007, Plaintiff e-mailed Historical

17   Finance questioning the continued unauthorized appearance of Wells Fargo

18   Bank account # 986-5719893 and Social Security Number on Plaintiff's

19   online banking dashboard (Exhibit K – 4 pages).

20       37.   In response, Plaintiff received email from Historical

21   Finance on June 12, 2007, explaining and stating that Wells Fargo Bank

22   account # 986-5719893 had "verifications of deposit on it" that "must be

23   maintained until June 30th when we can dissolve the account" (Exhibit K – 4

24   pages).

25       38.   On or about June 18, 2007, Plaintiff again e-mailed

26   Historical Finance questioning the continued unauthorized appearance of

27   Wells Fargo Bank account # 986-5719893 on Plaintiff's online banking

28

1    dashboard Historical Finance stated in response to Plaintiff's June 18, 2007

2    inquiry, that "it is not fraud to show an account that you have no value in" and

3    that to take Plaintiff's Social Security number "off the account we have to

4    close it, there is no other way" (Exhibit K – 4 pages).

5        39.    On June 22 2007, $46,000 was allegedly transferred from

6    the unexplained Wells Fargo Bank account # 986-5719893 to Plaintiff's

7    personal account with Defendant Wells Fargo Bank, account # 7553065207.

8    Plaintiff became aware of the June 22, 2007 transfer of funds when Defendant

9    Downey telephoned Plaintiff on or about June 22, 2007 accusing him of

10    "stealing" the money from Wells Fargo Bank account # 986-5719893 in the

11    amount of $46,000. Defendant Wells Fargo Bank was unable to explain the

12    transfer, other than to state that it took place "online"(Exhibit L – 33 pages)

13

14        40.    On or about June 22, 2007 Defendant Historical Finance

15    froze Plaintiff's personal checking account with Wells Fargo Bank, account #

16    7553065207 and informed Plaintiff that the account was "frozen" pending

17    return of the "stolen" funds by Plaintiff to the unexplained Wells Fargo

18    account # 986-5719893.

19        41.    On June 27, 2007, the three individuals (Plaintiff, Alex

20    Ryan Yamamura, and Diane Harris) whose Social Security numbers also

21    appeared on the unexplained Defendant Wells Fargo account # 986-5719893

22    were summoned by phone to Defendant Wells Fargo Bank branch in Santa

23    Ana, California. Defendant Wells Fargo Bank employee and agent Maricela

24    Santana (hereinafter "Santana"), Personal Banker, on behalf of Defendant

25    Wells Fargo Bank took the following actions:  1) released the hold on

26    Plaintiff's personal Wells Fargo Bank account # 7553065207; 2) instructed

27    Plaintiff to withdraw $46,000 from Plaintiff's personal account # 7553065207

28

1  and transfer the funds to a cashier check payable to Defendant Downey

2  personally; 3) instructed Plaintiff, Yamamura, and Harris to sign original

3  signature cards for Wells Fargo Bank account # 986-5719893; 4) closed

4  Wells Fargo Bank account # 986-5719893 and created a cashiers check

5  payable to Defendant Downey personally for all remaining funds in the

6  account (Exhibit L – 33 pages)

7        42.  Plaintiff understood that if he did not comply with the

8  request and instructions of Downey and Wells Fargo Bank he would be

9  charged with theft.

10        43.  Defendant Wells Fargo Bank indicated that the two

11  cashier's checks would be hand-carried by Yamamura to Defendant Downey

12  and did not explain how $46,000 was in Plaintiff's personal account or why

13  Defendant Downey was personally receiving the funds. Ms Santana carried

14  out these transactions expeditiously, in a professional manner, and would not

15  tell Plaintiff what was going on or answer any questions beyond those

16  necessary to complete the required business.

17        44.  On July 17, 2007, Plaintiff filed for bankruptcy protection

18  under Chapter 7 of the US Code, Case # 8:07-bk-12147-ES. Defendant

19  Washington Mutual was granted relief from automatic stay on October 30,

20  2007.

21        45.  Around that time, Plaintiff had been made aware of

22  potential fraud and other wrongful acts in relation to a mortgage funded by

23  Defendant Washington Mutual and negotiated by Defendants Downey and

24  Historical to Yamamura, and, after consultation with Richard Heston

25  (Plaintiff's bankruptcy attorney) and Paula Rush (a mortgage fraud advocate),

26  Plaintiff's bankruptcy was amended to exclude the Washington Mutual 1st

27

28

11

Trust Deed and Home Equity Line of Credit. The description included in this amendment reads: "Disputed claim against mortgage broker Pat Downey of Historical Real Estate and Finance and Washington Mutual Bank based on alleged fraudulent misrepresentations and mortgage brokering and lending practices in connection with consumer mortgage loans."

46.     Plaintiff's bankruptcy was discharged on November 13, 2007.

47.     On November 20, 2007, Plaintiff received certified mail from Washington Mutual dated 11/14/2007, indicating that foreclosure proceedings will begin (Exhibit M – 1 page).

48.     On December 5, 2007, a man who identified himself as an "inspector" visited Plaintiff's home in order to "verify that William Plaintiff is living here." Plaintiff identified himself to the inspector and confirmed that he was in fact living in the home.

49.     On January 8, 2008, Plaintiff sent a "qualified written request under the Real Estate Settlement Procedures Act, 12 U.S.C Section 2605(e)" (hereinafter "RESPSA letter" Exhibit N – 22 pages) for mortgage rescission and production of Plaintiff's complete mortgage file to Defendant Washington Mutual via certified mail return receipt to four known addresses for Washington Mutual:

a) Mailstop JAXA2031 / Washington Mutual / PO Box 44090 / Jacksonville FL 32231-4090

b) Washington Mutual / PO Box 78065 / Phoenix AZ 85062-8065

c) Washington Mutual / PO Box 78148 / Phoenix AZ 85062-8148

d) William G Malcom / Malcom Cisneros / 2112 Business Center Dr Fl 2 / Irvine CA 92612-7135.

50. All four return receipts were received within the following week (Exhibit O – 4 pages).

51. Defendant Washington Mutual did not respond within 20 days of receipt of to as required by 12 U.S.C Section 2605(e).

52. On January 28, 2008, a Notice of Default against Plaintiff was recorded in Riverside County, California against Plaintiff's home by Defendant Washington Mutual.

53. On February 7, 2008, Plaintiff received three (3) Debt Validation notices via regular mail identifying the sender as Quality Loan Service Corp, 2141 5th Avenue, San Diego CA 92101, Defendant Washington Mutual's agent and attorneys.

54. On February 8, 2008, Plaintiff received a fourth Debt Validation notice via certified mail, also from Quality Loan Service Corp.

55. On February 12, 2008, Plaintiff sent a copy of the "qualified written request under the Real Estate Settlement Procedures Act, 12 U.S.C Section 2605(e)" for mortgage rescission and production of the complete Plaintiff mortgage file to Quality Loan Service Corp via United States Postal Service mail with delivery confirmation and via their fax at 619-645-7716.

56. Delivery had not been confirmed by the US Postal Service as of March 10 2008, so Plaintiff re-sent the same letter by certified mail

13

1  return receipt on March 11 2008. The return receipt from this mailing was

2  received by Plaintiff shortly thereafter indicating delivery took place on

3  March 13, 2008.

4       57.    On February 15, 2008, Plaintiff received a letter from

5  Defendant Washington Mutual, indicating that Plaintiff's letter of January 8

6  2008 had been "forwarded to Washington Mutual's Executive Response

7  Team for reply" and giving a toll-free number to call (Exhibit P – 1 page).

8       58.    Plaintiff called the Executive Response Team at Defendant

9  Washington Mutual to learn about their delay in response to his rescission

10  letter and spoke to an agent (named David) who located Plaintiff's case.

11  David apologized for the delay but the call was then disconnected. Plaintiff

12  tried calling back three times and was disconnected twice; eventually Plaintiff

13  spoke to an agent named Anna with Defendant Washington Mutual who

14  confirmed that a response would be forthcoming and that the issue would be

15  addressed by Luis Reyes, a Manager in the department at Defendant

16  Washington Mutual.

17

18       59.    On March 3, 2008, Plaintiff received a letter from

19  Defendant Washington Mutual's Executive Response Team in response to

20  Plaintiff's RESPA letter of January 8, 2008. Defendant Washington Mutual

21  produced signed copies of the basic loan and indicated that no further

22  information would be provided since Plaintiff's letter was "not a qualified

23  written request because [Plaintiff did] not seek legitimate information

24  regarding [his] loan." "Instead," the letter states, Plaintiff's letter "appears to

25  be nothing more than a lengthy list of generic questions and requests for

26  documents that are unrelated to [Plaintiff's] specific loan or to any specific

27  problem with [Plaintiff's] loan" (Exhibit Q – 2 pages).

28

60.    On March 4, 2008, Plaintiff called the Defendant Washington Mutual ( Washington Mutual Executive Response Team) and spoke with a Mr. James Duarte. Mr. Duarte told Plaintiff that Washington Mutual would send no further documents unless a subpoena is issued for them. Mr. Duarte also agreed to send a message to the foreclosure department, which was then supposed to contact Plaintiff within 48-72 hours. (Plaintiff was not contacted by the foreclosure department.) Duarte also requested that a short-sale package be sent to Plaintiff, and indicated that any further communication on legal issues would have to be made with Defendant Washington Mutual's legal department, and Mr. Duarte provided Plaintiff with that address: Washington Mutual Legal Department / 1302 2nd Ave W / Seattle WA 98119.

61.    Also on March 4, 2008, Plaintiff sent the Defendant Washington Mutual's Legal Department a copy of the January 8, 2008 qualified written request, together with a cover letter asking for Defendant Washington Mutual's cooperation in resolving the fraud and clearly stating seven (7) demands for what Plaintiff would consider an equitable settlement. This letter was sent United States Postal Service Priority Mail with delivery confirmation and was received by Washington Mutual Legal Department on March 8 2008 at: Washington Mutual Legal Department / 1302 2nd Ave W / Seattle WA 98119 (Exhibit R – 2 pages).

62.    On March 5, 2008, Plaintiff received a telephone call from an agent named Nella at the Washington Mutual Executive Response Team. Nell received the Duarte's message regarding a short sale and faxed the "application" documents to Plaintiff. Nella also agreed that once Defendant Washington Mutual received the documents and assigned a negotiator then

1  Defendant Washington Mutual would stop foreclosure proceedings. Nella

2  confirmed for Plaintiff that Defendant Washington Mutual's foreclosure

3  attorney is Quality Loan Servicing Corp and that the foreclosure process

4  began on Plaintiff's home on January 25, 2008.

5         63.    On reliance on Defendant Washington Mutual's

6  representation that upon receipt of the application and assignment of a

7  negotiator the foreclosure would stop, on March 7, 2008, Plaintiff completed

8  his "application" (12 pages including delivery receipt) for Defendant

9  Washington Mutual loss mitigation and faxed it to 866-271-7346. The

10  application was also mailed to Washington Mutual at: Washington Mutual

11  Bank FA / 7255 Baymeadows Wy / Jacksonville FL 32256 (Exhibit S – 12

12  pages).

13         64.    Plaintiff did not receive a response to the RESPA letter

14  within 60 days as required under the law (12 U.S.C. 2605). On March 28,

15  2008, Plaintiff filed a formal Complaint with the California Department of

16  Real Estate. The Complaint was received on March 31, 2008, and formally

17  entered the Department of Real Estate's review process on May 9, 2008, case

18  # PC-08-0509-014 (Exhibit T – 5 pages).

19

20         65.    On April 7, 2008, Plaintiff telephoned Defendant

21  Washington Mutual, Loss Mitigation department and was told that

22  applications take 4-8 weeks to review and that Plaintiff would be called when

23  the review of the application was complete. On that call, Plaintiff was also

24  told that there was currently "no date of sale" for his home.

25         66.    On April 30, 2008, Plaintiff telephoned Defendant

26  Washington Mutual, Loss Mitigation department and was told that his

27  application had been assigned to Joslyn Beck. Also on this date, Plaintiff

28

:ase 2:08-cv-03365-SJO-JC   Document 1-7   Filed 05/22/08   Page 18 o:

received a voice message from Ms. Beck requesting a call back with

Plaintiff's mortgage account number. Plaintiff did return Ms. Beck's call and

left a voice message for Ms Beck including his mortgage account number and

information and social security number.

67.   On May 1, 2008, having not had a return call from Ms.

Beck with Defendant Washington Mutual, Plaintiff again called her and again

left another voice message for Ms. Beck including his mortgage account

information and social security number.

68.   On May 5, 2008, having not heard back from Ms. Beck,

Plaintiff engaged the services of Davis Foreclosure Assistance to represent

him in pursuing loan modification with Defendant Washington Mutual. Later

that same day, Plaintiff received a call back from Beck. Beck confirmed that,

as of that date, there was no date of sale. Plaintiff informed Beck that Davis

Foreclosure Assistance had been hired to represent him in the loan

modification process, and that Beck would be hearing from Davis Foreclosure

Assistance shortly. As a courtesy, Plaintiff emailed Ms. Beck a copy of

Plaintiff's January 8, 2008 RESPA letter.

69.   On May 10, 2008, Plaintiff received a letter from Joslyn

Beck dated May 5 2008, the same day of their telephone conversation. The

letter stated in part that Plaintiff's "request for loan workout is being denied

for the following reason(s): Response filed in the Foreclosure" (Exhibit U – 2

pages).

70.   In addition, Plaintiff was not informed by Historical

Finance or Defendant Downey that Defendant was not a registered mortgage

broker in California and was previously convicted for mortgage fraud.

71.    As a result of the fraud scheme relating to Plaintiff's mortgage and equity line of credit, Plaintiff sought recession of the mortgage and refinancing which was denied by Washington Mutual. As a result, Plaintiff had to file for bankruptcy relief, was threatened with foreclosure on Plaintiff's home and has sustained loss of credit and other damages as will be established at trial.

## COUNT I

(Unfair and Deceptive Trade Practices in Violation of 15 U.S.C. §45 (a)(1))
(Defendants Historical, Downey, Clark, Lawyers Title,
Hogan and Wells Fargo)

72.    Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1-71 as though fully alleged herein.

73.    Defendants Historical, Downey, Clark, Lawyers Title, Hogan and Wells Fargo engaged in an unfair and deceptive trade practice and aided and abetted in fraudulent concealment and representation of material loan conditions and terms and irregularities by participating in false verifications of deposits, unauthorized use of Plaintiff's name and Social Security Number on Wells Fargo accounts, unauthorized transfer of funds to Wells Fargo accounts in Plaintiff's name, false statements and representations to federal banking Defendants Wells Fargo and Washington Mutual in violation of 18 U.S.C. §1014, and the Truth and Lending Act, 15 U.S.C. §1601 *et seq.* (12 C.F.R. Part 226) to perpetrate a fraudulent scheme relating to the loan and escrow transaction of Plaintiff affecting commerce, all to Plaintiff's detriment, harm and damage.

## COUNT II

(Racketeer Influenced and Corrupt Organizations ["RICO"]

18

18 U.S.C. §1960 et seq., as amended)

(Defendants Historical, Downey, Clark, Lawyers Title, Hogan and Wells Fargo)

74.    Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1-73 as though fully alleged herein.

75.    Plaintiff is bringing his RICO claim pursuant to 18 U.S.C. ' 1962(c), which makes it a crime to Aconduct or participate, directly or indirectly, in the conduct of [an] enterprise's affairs though a pattern of racketeering activity.

76.    Defendants Historical, Downey, Clark, Lawyers Title, Hogan and Wells Fargo and each of them, jointly and severally, by and through their officers, managers, agents, representatives and employees constituted an "enterprise" pursuant to 18 U.S.C. §1961(4).

77.    Defendants, jointly and severally, engaged and/or conspired, aided and abetted to engage in two or more acts of "racketeering" pursuant to 18 U.S.C. §1961(4), including but not limited to: (1) mail fraud in violation of 18 U.S.C. §1341; (2) Wire fraud in violation of 18 U.S.C. §1343; (3) Bank fraud in violation 18 U.S.C. §1014; (4) interference with commerce by threats or extortion in violation of 18 U.S.C. §1951 and in violation of California State law.

78.    The racketeering predicates stated above, are related in the perpetration of the fraudulent mortgage scheme and they amount to or pose a threat of continued criminal activity.

79.    As a result of Defendants' wrongful conduct, Plaintiff was unwittingly and by fraud, duress and threats made a party to Defendants' fraudulent scheme to present false information in preparation of his loan

and escrow documents which in turn were submitted to Washington
Mutual. Due to Defendants' wrongful action, Plaintiff had to file for
bankruptcy relief, has been threatened with foreclosure on Plaintiff's home
and has sought recession of the mortgage and equity line of credit based on
the fraudulent brokerage of his loan.

80.    Defendants' pattern of racketeering activities has involved
other victims of mortgage fraud for several years. Defendant Downey has
been convicted in the past for fraudulent mortgage schemes and presently
Plaintiff is aware of five other victims and a total of nine mortgages of
Defendants' racketeering activities in mortgage transactions and there is a
real likelihood the racketeering activities will continue in the future.

## COUNT III

(RICO Civil Conspiracy, 18 U.S.C. §1962(d), as amended)

(Defendants Historical, Downey, Clark, Lawyers Title,
Hogan and Wells Fargo)

81.    Plaintiff realleges and incorporates herein the allegations
contained in paragraphs 1 through 80 as though fully alleged herein.

82.    Defendant, and each of them, by and through its officers,
managers, agents, representative, agents and employees, conspired to
violate the provisions of RICO, as amended, 18 U.S.C. §1962(a), (b), or (c).

83.    As a direct and proximate result of Defendants' wrongful
conduct, Plaintiff is entitled to compensatory damages, treble damages,
reasonable attorney's fees, and costs of suit in an amount to be determined
at a trial or hearing hereof.

## COUNT IV

(RESPA Violation Under 12 U.S.C. §1265 and

Unfair and Deceptive Trade Practices in Violation of 15 U.S.C. §45 (a)(1))

(Defendant Washington Mutual)

84.    Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 though 83 as though fully alleged herein.

85.    On January 8, 2008, Plaintiff sent a "qualified written request under the Real Estate Settlement Procedures Act, 12 U.S.C Section 2605(e)" for mortgage rescission and production of Plaintiff's complete mortgage file to Defendant Washington Mutual via certified mail return receipt to four known addresses for Defendant Washington Mutual.

86.    Defendant Washington Mutual did not acknowledge receipt of RESPA letter within the 20-day time period for responses nor the 60-day time frame set for investigation, explanation and response and production of requested documents  related to the mortgage and equity line transaction time in violation of 12 U.S.C. 2605(e) 1(A) and 2605 (e) 2 (A)-(C) and thus, Plaintiff is entitled to damages in accordance with 12 U.S.C. 2605(f).

87.    In addition, Defendant Washington Mutual's non-compliance with 12 U.S.C. 2605 et seq. involves a transaction relating to commerce and is an unfair and deceptive trade practice.

## COUNT V

### Bad-Faith

### Breach of Implied Covenant of Good Faith

21

(Washington Mutual)

88.   Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 though 87 as though fully alleged herein.

89.   On or about Plaintiff entered into a mortgage and equity line of credit agreement with Defendant Washington Mutual which included an implied covenant of good faith by which each party was to perform their duties under the agreements.

90.   Defendant Washington Mutual intentionally and in bad faith refused to comply with the legal requirements of 12 U.S.C. 1205 *et seq.* to the detriment and damage of Plaintiff, including but not limited to payments, fees and interest incurred under the mortgage and equity line of credit agreements, which amounts will be established at trial or hearing herein.

## COUNT VI

(Fraud and Misrepresentation)

(Defendants Historical, Downey)

91.   Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 though 90 as though fully alleged herein.

92.   Defendants wrongful actions included the following material misrepresentations/ non-disclosures that were reasonably relied on by Plaintiff:

a) Defendant Downey is a qualified broker, when he was not licensed;

Case 9:09-bk-10860-RR   Document 1-7   Filed 02/09   Page 2 of 3

b)  The unauthorized bank account with Wells Fargo Bank,
with Plaintiff's name, Social Security Number and $46,000 to
support Plaintiff obtaining a loan and representing that it was not a
fraud.

c)  Defendant Downey failure to disclosure that he was
funding the unauthorized bank account in Plaintiff's name with
Wells Fargo Bank in the amount of $46,000 in relation to Plaintiff's
mortgage transaction.

d)  Defendant Downey failing to disclosure that he put
approximately $8,000 in Plaintiff's personal bank account at Wells
Fargo Bank #7553065207.

e)  Defendant Downey requiring Plaintiff to obtain a false
verification of deposit for Wells Fargo account #7553065207, but
the deposit never showing on Plaintiff's bank statement.

93.    Plaintiff reasonably relied on Defendant Downey's
representations to his detriment and damage, as will be proven at trial herein.

## COUNT VII

(Respondeat Superior and Vicarious Liability)

(Defendant Historical Finance and Clark)

94.    Plaintiff realleges and incorporates herein the allegations
contained in paragraphs 1 though 93 as though fully alleged herein.

95.    Defendant Downey was the agent of Defendant Historical
Finance and Defendant Clark at all time relevant herein, and thus, they are

23

Case 2:08-cv-03385-SJO-JC   Document 1-7   Filed 05/22/08   Page 25 o

1   responsible for Defendant Downey's negligent and intentional conduct in the
2   scope of his brokerage services provided to Plaintiff.

3       96.   In addition, Defendants Historical Finance and Clark were
4   negligent and or grossly negligent in the hiring and supervision of Defendant
5   Downey all to the detriment and harm and damage of Plaintiff as will be
6   established at the trial herein.

7

8   ## COUNT VIII

9   (Fraud and Misrepresentation)

10   (Defendants Hogan, Lawyers Title and Wells Fargo)

11       97.   Plaintiff realleges and incorporates herein the allegations
12   contained in paragraphs 1 though 96 as though fully alleged herein.

13

14       98.   Defendants Hogan, Lawyers Title and Wells Fargo knew,
15   conspired and participated in the following intentional material
16   misrepresentations/ non-disclosures and fraud relating to Plaintiff's mortgage,
17   equity line of credit, escrow and accounts with Wells Fargo Bank:

18       a)   The unauthorized bank account with Wells Fargo Bank,
19   with Plaintiff's name, Social Security Number and $46,000
20   deposited by Downey to support a false verification of deposit.

21       b)   Defendant Downey's deposit of approximately $8,000 in
22   Plaintiff personal bank account at Wells Fargo Bank #7553065207
23   to support a false verification of deposit.

24       c)   Wells Fargo Bank never showing the deposit by Downey
25   into Plaintiff's personal account #7553065207 on his Wells Fargo
26   Bank statement.

27

28

24