*2 of 3      09-10860*

99.   Due to Defendants fraudulent representations and non-disclosures, Defendants Hogan, Lawyers Title and Wells Fargo are liable for Plaintiff's resulting damages, as will be proven at trial herein, including punitive damages.

## COUNT IX

(Respondeat Superior and Vicarious Liability)

(Defendants Lawyers Title and Wells Fargo)

100.   Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 though 99 as though fully alleged herein.

101.   Defendants Lawyers Title and Wells Fargo are responsible for their employees and agents negligent and intentional acts and omissions in the scope of their escrow and banking services, respectively, provided to Plaintiff and Plaintiff's resulting damages, including, punitive damages for wonton oppressive and willful conduct.

## COUNT X

(Breach of Fiduciary Duties)

(Defendants Downey, Clark, Historical Finance, Hogan and Lawyers Title)

102.   Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 though 101 as though fully alleged herein.

103.   Defendants Downey of Historical Finance, Hogan of Lawyers Title were retained by Plaintiff for their brokerage and escrow services due to representations of their knowledge, experience and qualifications in their respective fields. In addition, Defendant Downey was a business partner of Plaintiff.

Case 9:09-bk-10860-RR    Doc 44-1    Filed 04/02/10    Entered 04/02/10 16:42:31    Desc
Part 2 of 3    Page 2 of 32
Case 2:08-cv-05585-SVW-JC    Document 1-9    Filed 05/22/08    Page 27 o

104.   Defendants Downey and Hogan held a position of trust and confidence to Plaintiff in relation to Plaintiff's mortgage and refinancing needs, consulting and agreements and a fiduciary position to Plaintiff relating to the mortgage and refinancing transaction.

105.   The wrongful acts and or omissions noted the claims above were a breach of Defendants' Downey and Hogan's fiduciary duties to Plaintiff, including but not limited to, full and fair disclosure and loyalty. Defendants, principal and or employers, Clark, Historical and Lawyers Title are liable for the wrongful acts and breach of fiduciary duties of their agents and or employees under the principals of respondeat superior and vicarious liability.

106.   As a result of Defendants' Downey and Hogan's breach of fiduciary duties to Plaintiff, Plaintiff suffered proximate injury and damages as will be established at trial.

## COUNT X

### (Breach of Contracts)

### (Defendants Historical Finance, Lawyers Title, Wells Fargo

### and Washington Mutual)

107.   Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 though 106 as though fully alleged herein.

108.   The wrongful acts of Defendants Historical Finance, Lawyers Title, Wells Fargo, and their employee and or agents as stated in the claims above, breached the express and or implied agreements of said Defendants with Plaintiff, including, but not limited, the mortgage loan

Case 9:09-bk-10860-RR    Doc 44-1    Filed 04/02/10    Entered 04/02/10 16:42:31    Desc
Part 2 of 3    Page 3 of 32
Case 2:08-cv-03585-SJO-JC   Document 1-7   Filed 05/22/08   Page 28 o

agreement, home equity line of credit agreement and escrow agreement. As a result of Defendants breach of contract, Defendants are liable to Plaintiff for his special damages as will be proven at trial.

### COUNT XI

(Negligent and Intentional Actions)

(Defendants Downey, Clark, Historical Finance, Hogan,

Lawyers Title, Wells Fargo and Washington Mutual)

109.   Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 though 108 as though fully alleged herein.

110.   Defendants individually and jointly, owe Plaintiff a duty of due care and the wrongful acts, omissions and statutory violations by Defendants, as noted in paragraphs 1 through 108 above, are a negligent wanton, grossly negligent, egregious, oppressive and or intentional breach of Defendants duty of due care that they owe to Plaintiff.

111.   As a direct and proximate result of Defendants breach of duty of due care, Plaintiff has suffered and continues to suffer general and special damages, and punitive damages, as will be established and determined at trial herein.

### COUNT XII

(Negligent and Intentional Infliction of Emotional Distress)

(Defendants Downey, Clark, Historical Finance, Hogan, Lawyers Title, Wells

Fargo Bank and Washington Mutual)

Case 9:09-bk-10860-RR    Doc 44-1    Filed 04/02/10    Entered 04/02/10 16:42:31    Desc
Part 2 of 3    Page 4 of 32
Case 2:08-cv-03395-SJO-JC    Document 1-79 Filed 05/22/08    Page 29 o

112.    Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 though 111 as though fully alleged herein.

113.    As a result of the Defendants wrongful acts, omissions and statutory violations, as noted in paragraphs 1 through 111 above, Plaintiff suffered and continues to suffer emotional distress and damages, as will be established and determined at trial herein.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendants, jointly and severally as follows:

A.    General damages in an amount to be determined at a trial or hearing hereof;

B.    Special damages in an amount to be determined at a trial or hearing hereof;

C.    Compensatory damages in an amount to be determined at a trial or hearing hereof;

D.    Recession of the mortgagee loan agreement and the home equity line of credit with Defendant Washington Mutual and reimbursement of payments, fees, costs and charges paid under the rescinded agreements and the escrow agreement with Lawyers Title.

E.    Punitive and exemplary damages in an amount to be determined at a trial or hearing hereof;

F.    Statutory damages allowed by law.

G.    Attorney fees and costs attendant to prosecution of this action.

H.    Pre and post judgment interest.

I.     Any and all other relief as may be deemed just and equitable by the Court.

Dated: May 22, 2008, Orange County, California.

LAW OFFICE OF JENNIFER S. SMITH

By:

JENNIFER S. SMITH
Attorney for Plaintiffs

29

Case 9:09-bk-10860-RR    Doc 44-1    Filed 04/02/10    Entered 04/02/10 16:42:31    Desc
Part 2 of 3    Page 6 of 32
Case 2:08-cv-00585-SJO-JC    Document 1-9    Filed 05/22/08    Page 31 o

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION (RIVERSIDE)

| | |
|---|---|
| WILLIAM L. PROTZMANN, an individual and WILLIAM L. PROTZMANN, Trustee of the WILLIAM L PROTZMANN TRUST, u/d/t June 1, 2006,<br><br>        Plaintiffs,<br><br>    vs.<br><br>THE HISTORICAL REAL ESTATE AND FINANCE, a corporation, GREG CLARK, an individual, PAT DOWNEY, an individual, LAWYERS TITLE COMPANY, a corporation, DAWN HOGAN, an individual, WELLS FARGO BANK, a corporation, WASHINGTON MUTUAL BANK, FA a corporation, and JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; and OTHER ENTITIES 1-10,<br><br>        Defendants. | **CASE NO.**<br><br>**DEMAND FOR JURY TRIAL** |

## DEMAND FOR JURY TRIAL

Plaintiff WILLIAM L. PROTZMANN and WILLIAM L.

PROTZMANN, Trustee of the WILLIAM L. PROTZMANN TRUST, u/d/t June 1,

Case 9:09-bk-10860-RR    Doc 44-1    Filed 04/02/10    Entered 04/02/10 16:42:31    Desc
Part 2 of 3    Page 7 of 32
Case 2:08-cv-03385-SJO-JC    Document 1-9    Filed 05/22/08    Page 32 of

2006, request a trial by jury on all issues triable of right by jury in this case. This demand is made pursuant to Rule 38. Federal Rules of Civil Procedure.

Dated: Orange County, California, May 22, 2008.

LAW OFFFICE OF JENNIFER S. SMITH

JENNIFER S. SMITH

Attorney for Plaintiffs
WILLIAM L. PROTZMANN
WILLIAM L. PROTZMANN, Trustee of the
WILLIAM L. PROTZMANN TRUST, u/d/t
June 1, 2006

1  LAW OFFICE OF JENNIFER S. SMITH

2

3  JENNIFER S. SMITH #75602
   30251 Golden Lantern, Ste E-351
4  Laguna Niguel CA 92677-5993
5  Tel: 808-638-7283
6  E-Mail: jenniferssmith@earthlink.net

7

8  Attorney for Plaintiff
   WILLIAM L. PROTZMANN
9  and WILLIAM L. PROTZMANN,
10 Trustee of the WILLIAM L.
   PROTZMANN TRUST
11 u/d/t June 1, 2006
12

FILED

2008 SEP 24 PM 1:15

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY

13         UNITED STATES DISTRICT COURT

14        CENTRAL DISTRICT OF CALIFORNIA

15            WESTERN DIVISION

16

17 WILLIAM L. PROTZMANN, an          ) Civil No.  CV-08-3385 (SJO) (JCx)
   individual and WILLIAM L.         )
18 PROTZMANN, Trustee of the         )
19 WILLIAM L PROTZMANN               ) **SECOND AMENDED**
   TRUST, u/d/t June 1, 2006.        ) **COMPLAINT; CERTIFICATE OF**
20                                    ) **SERVICE**
21                                    )
22         Plaintiffs,               )
        vs.                          )
23                                    )
   HISTORICAL REAL ESTATE AND        )
24 FINANCE, a corporation, et al.,   )
25                                    )
26         Defendants.               )
27 ─────────────────────────────
28

## SECOND AMENDED COMPLAINT

COMES NOW, Plaintiff WILLIAM L. PROTZMANN and WILLIAM L. PROTZMANN, Trustee of the WILLIAM L. PROTZMANN TRUST, u/d/t June 1, 2006 (collectively referred to as "Plaintiff"), by and through their attorney, JENNIFER S. SMITH, and for second Amended Complaint against the above-named Defendants, alleges and avers as follows:

## PARTIES

1.      Plaintiff WILLIAM L. PROTZMANN (hereinafter "Plaintiff Protzmann) at all times relevant herein is and was a resident of the County of Riverside, State of California.

2.      Plaintiff Protzmann is the Trustee of the Plaintiff trust known as the WILLIAM L. PROTZMANN TRUST, u/d/t June 1, 2006 (hereinafter "Protzmann Trust").

3.      Defendant THE HISTORICAL REAL ESTATE AND FINANCE COMPANY (hereinafter "Defendant Historical Finance"),at all time relevant herein was a corporation domiciled and authorized to conduct business in the State of California and doing business in Ventura California as a mortgage brokerage business.

4.      Defendant Greg Clark (hereinafter "Defendant Clark"), at all times relevant herein was a real estate broker and owner and agent of Historical Finance.

5.      Defendant PAT DOWNEY (hereinafter "Defendant Downey") at all times relevant herein was an undisclosed non-licensed mortgage broker and agent of Defendant Historical Finance and working within the scope and course of his employment with Defendant Historical Finance.

1         6.    Defendants Historical Finance, Clark and Downey are

2   collectively referred to as "Defendants Historical Finance" and at all times

3   relevant herein were the agents of Plaintiff.

4         7.    Defendant THE LAWYERS TITLE COMPANY (hereinafter

5   referred to as "Defendant Lawyers Title") at all times relevant herein was a

6   corporation domiciled and authorized to conduct business in the State of

7   California, the escrow agent of Plaintiff's and bound to perform with skill and

8   diligence the terms and conditions of the escrow agreement.

9         8.    Defendant DAWN HOGAN (hereinafter "Hogan"), is an

10  escrow officer and agent of Lawyers Title at all times relevant herein and

11  working within the scope and course of her employment with Defendant

12  Lawyers Title. Defendant Lawyers Title and Hogan are referred to collectively

13  as Defendants Lawyers Title and agents of Plaintiff at all times relevant herein.

14        9.    Defendant WELLS FARGO BANK, N.A. (hereinafter "Wells

15  Fargo"), erroneously designated as Wells Fargo Bank corporation, was at all

16  time relevant herein a national association domiciled and authorized to conduct

17  business in the State of California. Wells Fargo Bank is a federally chartered

18  savings and loan association organized and operating under the Home Owners'

19  Loan Act ("HOLA"), 12 U.S.A. 1464(a) .

20        10.    Defendant WASHINGTON MUTUAL BANK, FA

21  (hereinafter "Washington Mutual"), at all times relevant herein is a corporation

22  organized under the laws of the State of Washington and authorized to conduct

23  business in the State of California. Washington Mutual is a federally chartered

24  savings and loan association organized and operating under the Home Owners'

25  Loan Act ("HOLA"), 12 U.S.A. 1464(a) .

26        11.    Defendants JOHN DOES 1-10; JANE DOES 1-10; DOE

27  PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; and OTHER ENTITIES

28                                      3

1   1-10 (collectively referred to as "Doe Defendants"), are sued herein under

2   fictitious names because their true names and identities are presently unknown

3   to Plaintiff, except that they were connected to the present lawsuit in some

4   manner and/or are persons, corporations, entities, agents, representatives,

5   business entities, associations, employers, co-conspirators, employees, or

6   governmental entities or agencies responsible for the conduct complained of

7   herein or were in some other manner presently unknown to Plaintiff engaged in

8   the activities alleged herein, and/or were in some manner responsible for the

9   injuries and damages to Plaintiff.  Plaintiff will identify the true names and

10  capacities, activities and/or responsibilities when such information is

11  ascertained.  Plaintiff has made diligent and good faith efforts to ascertain the

12  identities of those responsible, including a review of material generated in the

13  investigation of the incident, which forms the basis of this action.  Plaintiff will

14  seek leave of this Court to amend this Complaint when the true names and

15  capacities of the Doe Defendants have been ascertained and the extent of their

16  involvement with the acts and omissions stated herein.

17                              **JURISDICTION AND VENUE**

18          12.   This Court has jurisdiction of this matter pursuant to 28

19  U.S.C. §1331 as the claims arise under the laws of the United States.  This Court

20  also has supplemental jurisdiction of the state claims pursuant to 28 U.S.C.

21  §1367 as they are related to the claims in the action within original federal

22  jurisdiction and form part of the same case or controversy.  Venue is also proper

23  in the Central District of California, Eastern Division of Riverside, as the real

24  property which is the subject of this action is situated in the County of

25  Riverside, performance of the escrow and loan transaction took place in

26  Riverside County and Defendants Lawyers Title, Wells Fargo Bank and

27  Washington Mutual all have offices found in the County of Riverside.

28                                        4

## STATEMENT OF RELEVANT FACTS

13. Plaintiff owned the real property commonly known as 53665 Idyll brook Dr., Idyllwild, California, 92549, Tax Parcel No. 561220029-7 (hereinafter referred to as "Plaintiff's home" and lived there as his primary residence. (Title to Plaintiff's home was transfer to the Plaintiff Protzmann Trust in June 2006).

14. Plaintiff became acquainted with Defendant Downey in the spring of 2006 and he represented that he was a very experienced, skilled and professional mortgage broker with Historical Finance.

15. Shortly thereafter, Plaintiff entered into a business relationship with Downey and others in 2006 and formed a company known as the "Connection" which did not move past the planning stage.

16. When Plaintiff needed refinancing of his home, Downey represented to Plaintiff and assured Plaintiff that he was well qualified as a mortgage broker and that Plaintiff could rely on him and Historical Finance to take care of everything and get Plaintiff the best deal on refinanced loan on Plaintiff's home and an equity line of credit.

17. Plaintiff relied on Defendant Downey's representation that he and Defendant Historical Finance were well qualified and experienced to secure Plaintiff additional financing, Thus, Plaintiff informed Defendant Historical Finance and Downey that he needed to have Plaintiff's home refinanced quickly to avoid a potential bankruptcy and for financial reorganization to be able to comply with court ordered payments in a lengthy divorce proceeding, in particular, an unreasonable and excessive Temporary Support Order in place from November 2006, for which he was in contempt of court for non-payment and subject to possible arrest and imprisonment.

1        18.   In response to Plaintiff's financial urgency, Downey,

2   mortgage broker and agent of Historical Finance represented to Plaintiff that the

3   loan process from application to funding would take 30 days or less.  Based on

4   this representation and that the loan package would be at a competitive and

5   reasonable rate/cost to Plaintiff, Plaintiff agreed to secure the financing

6   mortgage services of Defendants Historical Finance.  Downey assured Plaintiff

7   that "I would have no trouble qualifying" and the financing would be in place

8   within a month.

9        19.   Plaintiff relying on the presentations of Defendants Historical

10   Finance, in February 2007, Plaintiff applied for a mortgage through Historical

11   Finance to refinance an existing first trust deed and home equity line of credit on

12   Plaintiff's home, both of which were held at that time by Countrywide Home

13   Loans. (hereinafter "Countrywide").

14        20.   Plaintiff continued to pay the mortgage to Countrywide

15   reasonably expecting a prompt closing and refinance funding with Historical

16   Finance based on its representations of the month turnaround time for funding of

17   the new financing to mitigate his financial crisis.

18        21.   On or about March 1, 2007, Plaintiff received refinance

19   escrow instructions from Lawyers Title by mail from its escrow officer and

20   agent Defendant Hogan . Plaintiff reviewed, executed and returned the escrow

21   instructions as requested, in the provided self-addressed stamped envelope.

22        22.   On or about March 31, 2007, Plaintiff became aware that

23   Plaintiff's online internet-based banking dashboard with Wells Fargo Bank (the

24   bank at which his personal and business banking accounts were also held),

25   displayed a new deposit account with a large balance. The account number for

26   this new Wells Fargo Bank account was 986-5719893.

27

28

23.   Plaintiff did not execute any document to approve or give authority to open a new deposit account or to be included on anybody else's account with Wells Fargo Bank.

24.   On or about April 3, 2007, Plaintiff received a "loan commitment" letter from Defendant Washington Mutual listing 23 conditions upon which the loan would be approved. Of these conditions, Plaintiff was able to respond to some but not all, as detailed in his email to Defendant Downey dated April 3 2007.

25.   On or about April 3, 2007, Plaintiff also faxed additional information to Defendants Downey/ Historical Finance (care of Stacey Eagle) including: a) Trust Transfer Deed dated June 2 2006 evidencing Plaintiff's sole ownership of Plaintiff's home; b) homeowner's insurance policy from Allstate for Plaintiff's home for May 13, 2006 to May 13, 2007; c) utility bill from Southern California Edison for utilities provided to Plaintiff's home February 20, 2007 through March 21, 2007; and  d) Family Law Summons in PROTZMANN v. PROTZMANN, Case No. 06D000150, dated January 9, 2007.

26.   On or about April 4, 2007, Plaintiff received a faxed "request for verification of deposit" from Defendant Historical Finance with handwritten instructions to Plaintiff to "take this to your bank and fill it out." The Wells Fargo account number listed on the request for verification of deposit is #7553065207, and the balance listed was $11,000.

27.   Plaintiff's Wells Fargo Bank statements for this account for the period January 3, 2007 through March 1, 2007, the period during in which Plaintiff's loan application was made, have no instance of a balance over $3,000, and Plaintiff stopped all activity and made no deposits on Wells Fargo Bank account #7553065207 from about March 1 2007 due to proceedings in his divorce proceedings.  Plaintiff had not deposited additional money in his Wells

1 Fargo account #7553065207 and had not authorized anyone to deposit funds in

2 Plaintiff's Wells Fargo account #7553065207.

3         28.   Plaintiff questioned Defendant Historical Finance as to its

4 instructions to Plaintiff to obtain a verification of deposit regarding Plaintiff's

5 personal account #7553065207 with Defendant Wells Fargo Bank in the amount

6 of $11,000 which was not an accurate balance, was not Plaintiff's money, and

7 no authorization had been granted by Plaintiff for use of his account and was

8 told by Defendants Historical Finance "not to worry about it." with no further

9 disclosure regarding use and verification of Plaintiff's account.

10         29.   On April 5, 2007, Plaintiff received a faxed Good Faith

11 Estimate of Closing Costs from Defendant Historical Finance.

12         30.   In addition, on April 5, 2007, Plaintiff faxed Defendant

13 Historical Finance a statement from Plaintiff's Certified Public Accountant,

14 Hugh Christensen, and two letters from Countrywide regarding charges for late

15 mortgage payments for the months of December 2006 and February 2007.

16         31.   On April 30, 2007, Plaintiff faxed Historical Finance a

17 certification of trust as requested by Defendant Washington Mutual per the loan

18 commitment letter, item #3, William L Protzmann Trust, u/d/t June 1 2006.

19         32.   On May 10, 2007, Plaintiff signed loan documents in Mission

20 Viejo California at Starbucks at La Paz and hwy 405 with a licensed notary

21 present. The new loans – 1st Trust Deed and Home Equity Line of Credit with

22 Defendant Washington Mutual – were funded on May 14, 2007.

23         33.   A Final Settlement Statement was mailed to Plaintiff from

24 Defendants Historical Finance shortly thereafter.

25         34.   By the time the refinance closed and was funded on May 14,

26 2007, Plaintiff had incurred a 30-day and a 60-day late fee charge and additional

27

28

1  interest on the Countrywide first trust deed on Plaintiff's home and a 30-day late
2  on the home equity line.

3          35.   The loan documents were executed 34 days from receipt of
4  the Good Faith Estimate, 36 days from receipt of Loan Commitment, and, to be
5  conservative, more than 80 days after the Plaintiff's loan application with
6  Defendants Historical Finance.

7          36.   On or about June 11, 2007, Plaintiff e-mailed Defendant
8  Historical Finance questioning the continued unauthorized appearance of Wells
9  Fargo Bank account # 986-5719893 and Plaintiff's name and Social Security
10 Number on Plaintiff's online banking dashboard.

11         37.   In response, Plaintiff received email from Defendant
12 Historical Finance on June 12, 2007, explaining and stating that Wells Fargo
13 Bank account # 986-5719893 had "verifications of deposit on it" that "must be
14 maintained until June 30[th] when Defendant Historical Finance will dissolve the
15 account."

16         38.   On or about June 18, 2007, Plaintiff again e-mailed
17 Defendant Historical Finance questioning the continued unauthorized
18 appearance of Wells Fargo Bank account # 986-5719893 on Plaintiff's online
19 banking dashboard . Defendants Historical Finance stated in response to
20 Plaintiff's June 18, 2007 inquiry, that "it is not fraud to show an account that
21 you have no value in" and that to take Plaintiff's Social Security number "off the
22 account we have to close it, there is no other way.

23         39.   On June 22, 2007, $46,000 was allegedly transferred from
24 the unexplained Wells Fargo Bank account # 986-5719893 to Plaintiff's
25 personal account with Defendant Wells Fargo Bank, account # 7553065207.
26 Plaintiff became aware of the June 22, 2007 transfer of funds when Defendant
27 Downey telephoned Plaintiff on or about June 22, 2007 accusing him of

28                                          9

1 "stealing" the money from Wells Fargo Bank account # 986-5719893 in the
2 amount of $46,000. Defendant Wells Fargo Bank was unable to explain the
3 transfer of funds on the Wells Fargo account, other than to state that it took
4 place "online." On or about June 22, 2007 Defendant Historical Finance froze
5 Plaintiff's personal checking account with Wells Fargo Bank, account #
6 7553065207 and informed Plaintiff that the account was "frozen" pending return
7 of the "stolen" funds by Plaintiff to the unexplained Wells Fargo account # 986-
8 5719893.

9       40.   On June 27, 2007, the three individuals (Plaintiff, Alex Ryan
10 Yamamura, and Diane Harris) whose Social Security numbers also appeared on
11 the unexplained Defendant Wells Fargo account # 986-5719893 were
12 summoned by phone to Defendant Wells Fargo Bank branch in Santa Ana,
13 California. Defendant Wells Fargo Bank employee and agent Maricela Santana
14 (hereinafter "Santana"), Personal Banker, on behalf of Defendant Wells Fargo
15 Bank took the following actions: 1) released the hold on Plaintiff's personal
16 Wells Fargo Bank account # 7553065207; 2) instructed Plaintiff to withdraw
17 $46,000 from Plaintiff's personal account # 7553065207 and transfer the funds
18 to a cashier check payable to Defendant Downey personally; 3) instructed
19 Plaintiff, Yamamura, and Harris to sign original signature cards for Wells Fargo
20 Bank account # 986-5719893; 4) closed Wells Fargo Bank account # 986-
21 5719893 and created a cashier's check payable to Defendant Downey personally
22 for all remaining funds in the account.

23       41.   Plaintiff understood that if he did not comply with the request
24 and instructions of Defendants Historical Finance and Defendant Wells Fargo
25 Bank, that the police would be called and he would be arrested and charged with
26 theft from Defendant Wells Fargo Bank.

27

28                                          10

42.    Defendant Wells Fargo Bank indicated that the two cashier's checks(executed by Plaintiff under threat of arrest) would be hand-carried by Yamamura to Defendant Downey and did not explain how $46,000 was in Plaintiff's personal account  without his knowledge, why others were on the account or why Defendant Downey was personally receiving the funds from the Wells Fargo Bank account.  Ms Santana carried out these transactions expeditiously, in a professional manner, and would not tell Plaintiff what was going on, make any disclosures to Plaintiff or his acquaintances on the same account or answer any questions beyond those necessary to complete the required business as coerced by Defendants Historical Finance and Defendants Wells Fargo Bank.

43.    As a result of Defendants not providing  a valid refinancing and equity line of credit and Defendants Historical finance failing to provide a valid refinancing and equity line of credit within one month of  Plaintiff's application, on July 17, 2007, Plaintiff filed for bankruptcy protection under Chapter 7 of the US Code, Case # 8:07-bk-12147-ES.  Defendant Washington Mutual was granted relief from the automatic stay on October 30, 2007.

44.    Around that time, Plaintiff had been made aware of potential fraud and other wrongful acts in relation to the loan process and mortgage funded by Defendant Washington Mutual and negotiated by Defendants Downey and Historical to Yamamura, and, after consultation with Richard Heston (Plaintiff's bankruptcy attorney) and Paula Rush (a mortgage fraud advocate), Plaintiff's bankruptcy was amended to exclude the Washington Mutual 1st Trust Deed and Home Equity Line of Credit. The description included in this amendment reads: "Disputed claim against mortgage broker Pat Downey of Historical Real Estate and Finance and Washington Mutual Bank

11

based on alleged fraudulent misrepresentations and mortgage brokering and lending practices in connection with consumer mortgage loans."

45.    Plaintiff's bankruptcy was discharged on November 13, 2007.

46.    On November 20, 2007, Plaintiff received certified mail from Defendants Washington Mutual dated 11/14/2007, indicating that foreclosure proceedings would commence.

47.    On December 5, 2007, a man who identified himself as an "inspector" visited Plaintiff's home in order to "verify that William Plaintiff is living here." Plaintiff identified himself to the inspector and confirmed that he was in fact living in the home.

48.    On January 8, 2008, Plaintiff sent to Defendant Washington Mutual a "qualified written request under the Real Estate Settlement Procedures Act, 12 U.S.C Section 2605(e)" (hereinafter "RESPSA letter") for mortgage rescission based on the fraud, misrepresentations, non-disclosures, discrepancies, omissions and irregularities relating to his mortgage and equity line financing regarding Defendants and requested production of Plaintiff's complete mortgage file via certified mail return receipt to four known addresses for Defendant Washington Mutual:

a)  Mailstop JAXA2031 / Washington Mutual / PO Box 44090 / Jacksonville FL 32231-4090.

b)  Washington Mutual / PO Box 78065 / Phoenix AZ 85062-8065

c)  Washington Mutual / PO Box 78148 / Phoenix AZ 85062-8148

d)  William G Malcom / Malcom Cisneros / 2112 Business Center Dr Fl 2 / Irvine CA 92612-7135.

All four return receipts were received within the following week.

49.   Defendant Washington Mutual did not respond within 20 days of receipt of the RESPSA letter as required by 12 U.S.C Section 2605(e).

50.   On January 28, 2008, a Notice of Default against Plaintiff was recorded in Riverside County, California against Plaintiff's home by Defendant Washington Mutual.

51.   On February 7, 2008, Plaintiff received three (3) Debt Validation notices via regular mail identifying the sender as Quality Loan Service Corp, 2141 5th Avenue, San Diego CA 92101,

52.   On February 8, 2008, Plaintiff received a fourth Debt Validation notice via certified mail, also from Quality Loan Service Corp.

53.   On February 12, 2008, Plaintiff sent a copy of the "qualified written request under the Real Estate Settlement Procedures Act, 12 U.S.C Section 2605(e)" for mortgage rescission and production of the complete Plaintiff mortgage file to Quality Loan Service Corp via United States Postal Service mail with delivery confirmation and via their fax at 619-645-7716.

54.   Delivery had not been confirmed by the US Postal Service as of March 10 2008, so Plaintiff re-sent the same RESPSA letter by certified mail return receipt on March 11 2008. The return receipt from this mailing was received by Plaintiff s shortly thereafter indicating delivery took place on March 13, 2008.

55.   On February 15, 2008, Plaintiff received a letter from Defendant Washington Mutual, indicating that Plaintiff's letter of January 8 2008 had been "forwarded to Washington Mutual's Executive Response Team for reply" and giving a toll-free number to call.

13

56.    Plaintiff called the Executive Response Team at Defendant Washington Mutual to learn about their delay in response to his rescission letter and spoke to an agent (named David) who located Plaintiff's case. David apologized for the delay but the call was then disconnected. Plaintiff tried calling back three times and was disconnected twice; eventually Plaintiff spoke to an agent named Anna with Defendant Washington Mutual who confirmed that a response would be forthcoming and that the issue would be addressed by Luis Reyes, a Manager in the department at Defendant Washington Mutual.

57.    On March 3, 2008, Plaintiff received a letter from Defendant Washington Mutual's Executive Response Team in response to Plaintiff's RESPA letter of January 8, 2008. Defendant Washington Mutual produced signed copies of the basic loan and indicated that no further information would be provided since Plaintiff's letter was "not a qualified written request because [Plaintiff did] not seek legitimate information regarding [his] loan." "Instead," the letter states, Plaintiff's letter "appears to be nothing more than a lengthy list of generic questions and requests for documents that are unrelated to [Plaintiff's] specific loan or to any specific problem with [Plaintiff's] loan."

58.    On March 4, 2008, Plaintiff called Defendant Washington Mutual ( Washington Mutual Executive Response Team) and spoke with a Mr. James Duarte. Mr. Duarte told Plaintiff that Defendant Washington Mutual would send no further documents unless a subpoena is issued for them. Mr. Duarte also agreed to send a message to the foreclosure department, which was then supposed to contact Plaintiff within 48-72 hours. (Plaintiff was not contacted by the foreclosure department.) Mr. Duarte also requested that a short-sale package be sent to Plaintiff, and indicated that any further communication on legal issues would have to be made with Defendant

Washington Mutual's legal department; and, Mr. Duarte provided Plaintiff with that address: Washington Mutual Legal Department / 1302 2nd Ave W / Seattle WA 98119.

59.   Also on March 4, 2008, Plaintiff sent Defendant Washington Mutual's Legal Department a copy of the January 8, 2008 qualified written request, together with a cover letter asking for Defendant Washington Mutual's cooperation in resolving the fraud and clearly stating seven (7) demands for what Plaintiff would consider an equitable settlement. This letter was sent United States Postal Service Priority Mail with delivery confirmation and was received by Defendant Washington Mutual's Legal Department on March 8 2008 at 1302 2nd Ave W / Seattle WA 98119.

60.   On March 5, 2008, Plaintiff received a telephone call from an agent named Nella at the Washington Mutual Executive Response Team. Nell received the Duarte's message regarding a short sale and faxed the "application" documents to Plaintiff.  Nella also agreed that once Defendant Washington Mutual received the documents and assigned a negotiator then Defendant Washington Mutual would stop foreclosure proceedings.  Nella confirmed for Plaintiff that Defendant Washington Mutual's foreclosure attorney is Quality Loan Servicing Corp and that the foreclosure process began on Plaintiff's home on January 25, 2008.

61.   On reliance on Defendant Washington Mutual's representation that upon receipt of the application and assignment of a negotiator the foreclosure would stop, on  March 7, 2008, Plaintiff completed his "application" (12 pages including delivery receipt) for Defendant Washington Mutual loss mitigation and faxed it to 866-271-7346. The

application was also mailed to Defendant Washington Mutual at: Washington Mutual Bank FA / 7255 Baymeadows Wy / Jacksonville FL 32256.

62.   Plaintiff did not receive a response to the RESPA letter within 60 days as required under the law (12 U.S.C. 2605). On March 28, 2008, Plaintiff filed a formal Complaint with the California Department of Real Estate. The Complaint was received on March 31, 2008, and formally entered the Department of Real Estate's review process on May 9, 2008, case # PC-08-0509-014.

63.   On April 7, 2008, Plaintiff telephoned Defendant Washington Mutual's, Loss Mitigation department and was told that applications take 4-8 weeks to review and that Plaintiff would be called when the review of the application was complete. On that call, Plaintiff was also told that there was currently "no date of sale" for his home.

64.   On April 30, 2008, Plaintiff telephoned Defendant Washington Mutual's, Loss Mitigation department and was told that his application had been assigned to Joslyn Beck. Also on this date, Plaintiff received a voice message from Ms. Beck requesting a call back with Plaintiff's mortgage account number. Plaintiff did return Ms. Beck's call and left a voice message for Ms Beck including his mortgage account number, information and social security number.

65.   On May 1, 2008, having not had a return call from Ms. Beck with Defendant Washington Mutual, Plaintiff again called her and again left another voice message for Ms. Beck including his mortgage account information and social security number.

66.   On May 5, 2008, having not heard back from Ms. Beck, Plaintiff engaged the services of Davis Foreclosure Assistance to represent him in pursuing loan modification with Defendant Washington Mutual.  Later that same day, Plaintiff received a call back from Beck. Beck confirmed that, as of that date, there was no date of sale. Plaintiff informed Beck that Davis Foreclosure Assistance had been hired to represent him in the loan modification process, and that Beck would be hearing from Davis Foreclosure Assistance shortly. As a courtesy, Plaintiff emailed Ms. Beck a copy of Plaintiff's January 8, 2008 RESPA letter.

67.   On May 10, 2008, Plaintiff received a letter from Joslyn Beck dated May 5 2008, the same day of their telephone conversation.  The letter stated in part that Plaintiff's "request for loan workout is being denied for the following reason(s): Response filed in the Foreclosure."

68.   In addition, Plaintiff was not informed by Defendant Historical Finance, Defendant Downey, Defendant, Lawyers Title or Defendant Wells Fargo that Defendant Downey was not a registered mortgage broker in California though they knew he was not or should have known that he was not licensed.  Nor did Defendants inform Plaintiff that Defendant Downey was previously convicted for mortgage fraud.

69.   As a result of the negligence, unfair trade practices, wrongful acts and omissions of Defendants and Defendants fraud scheme relating to Plaintiff's mortgage and equity line of credit, Plaintiff sought recession of the mortgage and refinancing, which was denied by Defendant Washington Mutual. As a result, Plaintiff had to file for bankruptcy relief, was threatened with foreclosure on Plaintiff's home, is delinquent in his house payments and has sustained loss of credit and other damages as will be established at trial.

## COUNT I

(Unfair and Deceptive Trade Practices in Violation of 15 U.S.C. §45 (a)(1))

(Against All Defendants)

70.    Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1-69 as though fully alleged herein.

71.    Defendants Historical Financial, Defendants Lawyers Title, and Wells Fargo engaged in an unfair and deceptive trade practice and aided and abetted in unfair and deceptive trade practices including but not limited to, fraudulent concealment, irregularities, non-disclosure and misrepresentation of material loan conditions, fees, commissions, terms, conditions, over charging for the cost of certain services or not providing the service at all , deceptive Good Faith Settlement and participated in false verifications of deposits, unauthorized use of Plaintiff's name and Social Security Number on Wells Fargo accounts, unauthorized transfer of funds to Wells Fargo accounts in Plaintiff's name, false statements, threats of arrest and defamation per se (criminal activity of theft) and misrepresentations to federal banks, Defendants Wells Fargo and Washington Mutual, including violation of 18 U.S.C. §1014, and the Truth and Lending Act, 15 U.S.C. §1601 *et seq.* (12 C.F.R. Part 226) to perpetrate a fraudulent scheme relating to the loan and escrow transaction of Plaintiff and affecting banking and commerce, all to Plaintiff's detriment, harm,  damage, loss and emotional distress and benefit to Defendants.

## COUNT II

(Racketeer Influenced and Corrupt Organizations ["RICO"]

18 U.S.C. §1960 et seq., as amended)

(Against All Defendants)

18

72.    Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1-71 as though fully alleged herein.

73.    Plaintiff is bringing his RICO claim pursuant to 18 U.S.C. ' 1962(c), which makes it a crime to conduct or participate, directly or indirectly, in the conduct of [an] enterprise's affairs though a pattern of racketeering activity.

74.    Defendants Historical Finance, Defendants Lawyers Title, Defendants Wells Fargo and Defendant Washington Mutual jointly and severally, by and through their officers, managers, agents, representatives and employees constituted an "enterprise" pursuant to 18 U.S.C. §1961(4).

75.    Defendants, jointly and severally, engaged and/or conspired, aided and abetted to engage in two or more acts of "racketeering" pursuant to 18 U.S.C. §1961(4), including but not limited to: (1) mail fraud in violation of 18 U.S.C. §1341; (2) Wire fraud in violation of 18 U.S.C. §1343; (3) Bank fraud in violation 18 U.S.C. §1014; (4) interference with commerce by threats or extortion in violation of 18 U.S.C. §1951 and in violation of California State law.

76.    The racketeering predicates stated above, are related in the perpetration of the fraudulent mortgage scheme and they amount to or pose a threat of continued criminal activity.

77.    As a result of Defendants' wrongful conduct, Plaintiff was unwittingly and by fraud, duress and threats made a party to Defendants' fraudulent scheme to present false information in preparation of his loan and escrow documents which in turn were submitted to Defendant Washington Mutual. Due to Defendants' wrongful action, Plaintiff had to file for bankruptcy

19

relief, has been threatened with foreclosure on Plaintiff's home and has sought recession of the mortgage and equity line of credit based on the fraudulent brokerage of his loan.

78.    Defendants' pattern of racketeering activities has involved other victims of mortgage fraud for several years. Defendant Downey has been convicted in the past for fraudulent mortgage schemes and presently Plaintiff is aware of five other victims and a total of nine mortgages of Defendants' racketeering activities in mortgage transactions and there is a real likelihood the racketeering activities will continue in the future.

79.    Defendants' unlawful conduct in this action is in violation of 18 U.S.C. §§1962(c) and (d).

80.    The following misconduct of Defendants is the basis of each Defendants' liability:

81.    Defendant Historical Real Estate and Finance (hereinafter " Historical Finance") is a liable enterprise under the Racketeer Influenced and Corrupt Organizations Act ("RICO") for its employee and agent Defendant Pat Downey (hereinafter "Defendant Downey") for conspiracy to violate, and for Defendant Downey's repeated violations of 18 U.S.C. §1341(fraud scheme involving mail and interstate commerce), 18 U.S.C. §1343 (fraud scheme utilizing wire, computer e-mails and interstate commerce), in communicating with Plaintiff and engaging in the fraudulent scheme with Defendants Dawn Hogan (hereinafter "Hogan"), Defendant The Lawyers Title Company (hereinafter "Defendant Lawyers Title) and Wells Fargo Bank, including the wire transfer of money into Plaintiff's personal account with Wells Fargo Bank and into an account set up by for Plaintiff which he did not authorize and then

20

1 money transferred by wire into Plaintiff's personal account without his
2 authorization or knowledge.

3      82. In addition, Defendant Downey engaged in false
4 representations to federal banks, Defendants Wells Fargo Bank and Washington
5 Mutual relating to Plaintiff's accounts and verification of deposits in violation of
6 18 U.S.C. §1014.

7      83.   In addition, Plaintiff was accused of theft from Wells Fargo
8 Bank by Downey and Wells Fargo and was threatened to be charged with a
9 crime or a crime would be imputed to Plaintiff, by threats, extortion and fear in
10 violation of 18 U.S.C. §1951 and in violation of California State law. Wells
11 Fargo and Downey caused Plaintiff to execute documents to take funds
12 ($46,000) that did not belong to Plaintiff from an unauthorized account (with
13 others) and give the money to Downey.

14      84.   Defendant Greg Clark was the owner and principal of the
15 racketeering enterprise Historical Finance and is personally liable for conspiring
16 and aiding and abetting co-conspirator Downey in the wrongful actions state
17 above.

18      85.   Defendant Downey was an agent of Historical Finance and
19 is personally liable under RICO, as noted above, for participating in the
20 fraudulent scheme to violate and personally violating: (1) mail fraud in
21 violation of 18 U.S.C. §1341; (2) Wire fraud in violation of 18 U.S.C. §1343;
22 (3) Bank fraud in violation 18 U.S.C. §1014; (4) interference with commerce by
23 threats or extortion in violation of 18 U.S.C. §1951 and in violation of
24 California State law.

25      86.   Defendant Dawn Hogan was an agent of Defendant Lawyers
26 Title and is personally liable under RICO, as noted above, for participating in
27 the fraudulent scheme to violate and personally violating: (1) mail fraud in

28

violation of 18 U.S.C. §1341; (2) Wire fraud in violation of 18 U.S.C. §1343;
(3) Bank fraud in violation 18 U.S.C. §1014.

87.     Defendant Lawyers Title is a liable enterprise under RICO
for its employee and agent Hogan's RICO activities.

88.     Wells Fargo Bank is a liable enterprise under RICO for its
employees and agents RICO activities: (1) mail fraud in violation of 18 U.S.C.
§1341; (2) Wire fraud in violation of 18 U.S.C. §1343; (3) Bank fraud in
violation 18 U.S.C. §1014; (4) interference with commerce by threats or
extortion in violation of 18 U.S.C. §1951 and in violation of California State
law.

89.  Defendant Washington Mutual Bank (hereinafter "Washington
Mutual") is a liable enterprise under RICO and by and through its agents and
participated with Historical Finance and its agents, including Defendant
Downey in conspiracy to violate and repeated violations of 18 U.S.C.
§1341(fraud scheme involving mail and interstate commerce), 18 U.S.C. §1343
(fraud scheme utilizing wire, computer e-mails and interstate commerce), in
communicating with Plaintiff and providing financing upon knowingly
fraudulent representations of Plaintiff's income and assets and non-disclosure
of material basis of the refinancing and engaging in said fraudulent scheme
with Defendant Lawyers Title and Wells Fargo Bank, including the wire
transfer of money into Plaintiff's personal account with Wells Fargo Bank and
into a bank account set up for Plaintiff which he did not authorize, including
use of his social security identification and then the transfer of money by wire
into Plaintiff's personal account without his authorization or knowledge in
furtherance of the fraudulent scheme.

90.  In addition, Washington Mutual conspired and abetted
Defendant Downey and Historical Finance in engaging in false representations

to federal banks, including Wells Fargo Bank relating to Plaintiff's accounts and verification of deposits in violation of 18 U.S.C. §1014.

91.    Additional wrongdoers other than Defendants are involved as follows:

92.    Wells Fargo Bank had various employees or agents who were involved in setting bank accounts, including Maricela Santana, in conspiracy with Downey, Historical Finance and Hogan for Plaintiff which were not authorized, participated in deposit of funds into his accounts without authorization, transfer of funds without his authorization, and imputed to Plaintiff the crime of theft. In addition, forced Plaintiff to withdraw money to be given to Defendant Downey and did not keep any records or statements of the deposits and withdrawals.

93.    In addition, the Wells Fargo employees knew that the funds deposited in the accounts was not Plaintiff's own deposits and verified the fraudulent deposits for the other co-conspirators.

### Victims of the Pattern of Racketeering Activities.

94.    In addition to Plaintiff, Defendants' pattern of racketeering activities has involved other victims of mortgage fraud for several years. Defendant Downey has been convicted in the past for fraudulent mortgage schemes and presently Plaintiff is aware of five other victims and a total of nine mortgages of Defendants' racketeering activities in mortgage transactions and there is a real likelihood the racketeering activities will continue in the future.

95.    Plaintiff believes that there are 100's of victims to the fraudulent RICO scheme alleged herein based on other litigation by consumers

and pending investigations into predatory lending schemes that involve Defendants.

96.    Plaintiff has been injured due to being provided refinancing and an equity line of credit based on a fraudulent scheme of conduct by Defendants, including oppressive and predatory lending practices. As a result of Plaintiff being provided refinancing on fraud, Plaintiff was compelled to file bankruptcy and his property went into foreclosure's property, his personal credit worth was reduced and he sustained emotional distress and monetary damages.

## The Pattern of Racketeering Activities Involving Predicate Acts
## and Violation of Statutes

97.    Mail fraud in Defendants' association with an enterprise engaged in, or the activities of which affect, interstate commerce, directly and indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity in under 18 U.S.C. §1962(c), in violation of 18 U.S.C. §1341

98.    Mail fraud in Defendants' conspiracy to associate with an enterprise engaged in, or the activities of which affect, interstate commerce, directly and indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. §1341, in violation of 18 U.S.C. §1341.

99.    Wire fraud in Defendants' association with an enterprise engaged in, or the activities of which affect, interstate commerce, directly and indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity in under 18 U.S.C. §1962(c), in violation of 18 U.S.C. §1343.

100.   Wire fraud in Defendants' conspiracy to associate with an enterprise engaged in, or the activities of which affect, interstate commerce, directly and indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. §1341, in violation of 18 U.S.C. §1343.

101.   Bank fraud in Defendants' association with an enterprise engaged in, or the activities of which affect, interstate commerce, directly and indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity in under 18 U.S.C. §1962(c), in violation of 18 U.S.C. §1041.

102.   Bank fraud in Defendants' conspiracy to associate with an enterprise engaged in, or the activities of which affect, interstate commerce, directly and indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. §1341, in violation of 18 U.S.C. §1041.

103.   Defendants' association with an enterprise engaged in, or the activities of which affect, interstate commerce, directly and indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity in under 18 U.S.C. §1962(c), in violation of the Truth and Lending Act, 15 U.S.C. §1601 *et seq.* (12 C.F.R. Part 226).

104.   Defendants' conspiracy to associate with an enterprise engaged in, or the activities of which affect, interstate commerce, directly and indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. §1341, in violation of the Truth and Lending Act, 15 U.S.C. §1601 *et seq.* (12 C.F.R. Part 226).

105.   Unfair and Deceptive Trade Practices in Violation of 15 U.S.C. §45(a)(1).

25